IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1 THROUGH 7,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE TALIBAN, AL-QAEDA,<br>and THE HAQQANI NETWORK,<br><br>*Defendants.* | Misc Action No. 1:20-mc-00740-KPF |

## EMERGENCY MOTION FOR WRIT OF EXECUTION

Plaintiffs, John Does 1 through 7, file this Emergency Motion for Writ of Execution in order to enforce their Final Default Judgment entered against the Taliban for injuries Plaintiffs suffered in a terrorist bomb attack on January 4, 2016.

### Introduction

The Plaintiffs have seen the terrorist group that bombed them come to power in Afghanistan. On or around August 15, 2021, the Taliban took over Afghanistan and the national bank of Afghanistan, Da Afghanistan Bank. Immediately thereafter, the United States, citing the existing authority to block Taliban assets, froze the federal reserves of Afghanistan, as the Taliban was now in control of Da Afghanistan Bank and could otherwise withdraw its assets from U.S. financial institutions. According to the former chief of the Afghan Central Bank, the Federal Reserve Bank of New York holds the bulk of those assets, reportedly $7 billion.[1]

---

[1] *See* "U.S. and I.M.F. Apply a Financial Squeeze on the Taliban" *available at* https://www.nytimes.com/2021/08/18/business/afghan-central-bank. ("About $7 billion of the central bank's $9 billion in foreign reserves are held by the Federal Reserve Bank of New York,

1

Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note (the "TRIA"), these blocked assets are subject to execution or attachment by the Plaintiffs, who are victims of and hold a judgment based on an act of terrorism against the Taliban. The final relief requested will compensate the Plaintiffs for their injuries while permanently depriving the Taliban of assets, precisely the aim of the Terrorism Risk Insurance Act.

## I.     The TRIA

The TRIA states:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages[2] for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note, TRIA § 201(a).

The execution may be made, provided that the following requirements are met:

(1) a person has obtained a judgment against a terrorist party;
(2) the judgment is either
  (a) for a claim based on an act of terrorism, or
  (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);
(3) the assets are "blocked assets" within the meaning of TRIA; and
(4) execution is sought only to the extent of any compensatory damages.

*Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006). No OFAC license is required for an execution against blocked funds pursuant to the TRIA. *Id.* at 499.

## II.     The requirements of the TRIA are met

---

the former acting governor of the Afghan central bank said Wednesday, and the Biden administration has already moved to block access to that money.")

[2] Plaintiffs seek to recover only compensatory damages through this TRIA execution. The entire amount of the $138,418,741.00 in compensatory damages plus interest that the Judgment awarded remains due and owing. *See* Affidavit of Orlando do Campo, attached hereto as Exhibit A.

(1) **Judgment against terrorist parties**

The Judgment was entered November 5, 2020 by the U.S. District Court for the Northern District of Texas, and was registered in this district on January 20, 2021. *See* DE 1, 5. Pursuant to 28 U.S.C. §1963, it has the same effect as a judgment of this district and may be enforced in like manner. On February 23, 2021, a general Writ of Execution was issued in favor of Plaintiffs and against the Taliban (and its co-judgment debtors).

The Taliban qualifies as "terrorist party". Section 201 of the TRIA provides:

> (d) Notes Definitions.--In this section, the following definitions shall apply:
> (4) Terrorist party.-- The term "terrorist party" means a terrorist, a terrorist organization **(as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi)))**, or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

TERRORISM RISK INSURANCE ACT OF 2002, 107 P.L. 297, 116 Stat. 2322, 2340, 107 P.L. 297, 2002 Enacted H.R. 3210, 107 Enacted H.R. 3210 (emphasis added). Section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi)) provides:

> (vi) "Terrorist organization" defined. As used in this section, the term "terrorist organization" means an organization—
> **(I) designated under section 219 [8 USCS § 1189]**;
> **(II) otherwise designated**, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses **(I)** through (VI) of clause (iv); or
> (III) **that is a group of two or more individuals**, whether organized or not, **which engages in**, or has a subgroup which engages in, **the activities described in subclauses (I) through (VI) of clause (iv).**

8 U.S.C. § 1182.

The Taliban is a Specially Designated Global Terrorist ("SDGT") organization pursuant to Executive Order 13268, which modified the annex to Executive Order 13224 to include the Taliban. "The term specially designated global terrorist or SDGT means

3

any person whose property and interests in property are blocked pursuant to § 594.201(a)." 31 C.F.R. § 594.310. 31 C.F.R. § 594.201(a) provides the list of SDGTs whose assets are blocked as including:

> (1) Foreign persons listed in the Annex to Executive Order 13224 of September 23, 2001, as may be amended; [and]

> (2) Foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Secretary of Homeland Security and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

31 C.F.R. § 594.201(a). Subsection (2) above tracks the language of 8 U.S.C. § 1182(a)(3)(B)(vi)(II) in that it refers to a determination by the Secretary of State. Subsection (1) refers to a Presidential designation pursuant to executive order. The statutory intent of the result of either determination, however, is the same: whether an organization is designated by the President or the Secretary of State, the result is that it is designated an SDGT. It certainly seems unlikely that the statutory intent was that an SDGT designated by the Secretary of State would be a "terrorist party", but one designated by the President would not be. Thus, it appears the Taliban was "otherwise designated", and qualifies as a terrorist party under Section 201 of the TRIA.

Alternatively, the Taliban qualifies under 8 U.S.C. § 1182(a)(3)(B)(vi)(III) because it is "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv)." Those subclauses define the term "engage in terrorist activity", and state that it means:

> (I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;
> (II) to prepare or plan a terrorist activity;
> (III) to gather information on potential targets for terrorist activity;
> (IV) to solicit funds or other things of value for—

4

(aa) a terrorist activity;
(bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or
(cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;
(V) to solicit any individual—
(aa) to engage in conduct otherwise described in this subsection;
(bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or
(cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or
(VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training—
(aa) for the commission of a terrorist activity;
(bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;
(cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or
(dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

8 U.S.C. § 1182(a)(3)(B)(iv). The bottom line is that the TRIA defines a "terrorist party" as one who engages in terrorist activity according to the above laundry list of actions. The acts for which Plaintiffs obtained their judgment against the Taliban undeniably include many acts on this list. *See* Complaint, attached hereto as Exhibit B at pars. 8, 19, 22,24-25, 30, 32-34, 38-44, 49, 57-64, 67, 75-82, 84, 91-99, 101-102, 106-114, 117, 122-130, 133, 139-147 and 155-163. The Taliban thus "engage[s] in terrorist activity" and qualifies as a "terrorist party" for purposes of the TRIA.

      (2)      Based on an act of terrorism[3]

---

[3] It is worth noting that the judgment itself is based on the Anti-Terrorism Act, 18 U.S.C. § 2333, and Civil RICO, 18 U.S.C. § 1961, (based upon, *inter alia*, predicate acts of terrorism). The Anti-

The attack fits the relevant statutory definition of an act of terrorism. Section 201 of the TRIA provides:

> (d) Notes Definitions.--In this section, the following definitions shall apply:
>   (1) Act of terrorism.-- The term "act of terrorism" means--
>     (A) **any act or event certified under section 102(1);** or
>     (B) to the extent not covered by subparagraph (A), any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))).

TERRORISM RISK INSURANCE ACT OF 2002, 107 P.L. 297, 116 Stat. 2322, 2339, 107 P.L. 297, 2002 Enacted H.R. 3210, 107 Enacted H.R. 3210 (emphasis added). This attack, which took place on January 4, 2016, was indeed certified as a terrorist attack under Section 102(1) of the TRIA on April 13, 2016. This incident is on the published list of certified acts of terrorism. *See* "International Terrorism Victim Expense Reimbursement Program – Terrorist Incident Designation List" *available at* https://ovc.ojp.gov/program/international-terrorism-victim-expense-reimbursement-program-itverp/terrorist-incident-designation-list. Had it not already been certified, this attack would qualify under subsection (B), however such analysis is not necessary given that the attack has been certified under Section 102(1) of the TRIA.

Requirements (1) and (2) are clearly met. (Indeed it is beyond peradventure that a judgment under the Anti-Terrorism Act for injuries suffered in a massive terrorist bombing and awarded against the well-known terrorist judgment debtors would qualify as a judgment against terrorist parties based on an act of terrorism.)

    (3)    Blocked assets

---

Terrorism act provides jurisdiction for actions by U.S. nationals injured by "an act of international terrorism". Had this matter not concerned an act of terrorism, the district court would not have had jurisdiction under the ATA in the first place.

On Sept 23, 2001, President George W. Bush, acting pursuant to the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. 1701 *et seq.*), promulgated Executive Order ("EO") 13224, which blocked "all property and interests in property" of individuals and entities listed in its Annex. On July 2, 2002, again acting pursuant to IEEPA, President George W. Bush promulgated EO 13268, specifically placing "The Taliban" on the EO 13224 Annex. On or around August 15, 2021, after the Taliban takeover of Afghanistan, and pursuant to the Taliban's existing designation in the EO 13224 Annex, the U.S. Government froze all reserves of Afghanistan, including those held at the Federal Reserve Bank of New York. *See* "US Freezes Nearly 9.5 Billion Afghanistan Central Bank Assets" *available at*: https://www.bnnbloomberg.ca/u-s-freezes-nearly-9-5-billion-afghanistan-central-bank-assets-1.1641289; *see also* "Biden Administration Freezes Billions of Dollars in Afghan Reserves, Depriving Taliban of Cash" *available at* https://www.washingtonpost.com/us-policy/2021/08/17/treasury-taliban-money-afghanistan/. Because the assets held at the Federal Reserve Bank of New York were frozen by the United States pursuant to the Taliban's designation, the frozen assets undoubtedly qualify as "blocked assets" of the Taliban under TRIA.

According to TRIA, 28 U.S.C. § 1610, note, (d)(2):

(2) Blocked asset. The term 'blocked asset' means—
"(A) *any asset* seized or *frozen by the United States* under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b) [50 USCS § 4305(b)]) or *under sections 202 and 203 of the International Emergency Economic Powers Act* (50 U.S.C. 1701; 1702)

28 U.S.C.S. § 1610 (emphasis added).

>    (4)    Of a terrorist party judgment debtor or an agency or instrumentality of that terrorist party judgment debtor

The TRIA allows terrorism victim judgment holders to execute on blocked assets of terrorist party judgment debtors, but also the agencies or instrumentalities. 28 U.S.C. § 1610 note,

7

TRIA § 201(a); *see also Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010) (allowing for execution against a bank that was an instrumentality of Iran to satisfy a judgment against Iran).

Here, the assets are blocked precisely because the terrorist party judgment debtor, the Taliban, has taken over Da Afghanistan Bank. The Taliban have installed their own personnel at Da Afghanistan Bank, taking ownership and control of it and its assets.[4] These assets are either Taliban assets, or they are assets of an agency or instrumentality that the Taliban now holds and controls. Thus, they are assets "of" the terrorist judgment debtor, or "of" an agency or instrumentality of the judgment debtor. Either way, they qualify for TRIA execution.

### III.  The writ of execution should issue without delay

Finally, the writ should issue without delay.

#### A.  Service is adequate

First, Rule 4 service of process of the original action in this matter was served on the Taliban *via* publication of translations of a legal notice, the summons, and the complaint, for three weeks in a broadly-circulated Arabic language publication (as well as online publication), as approved by the United States District Court for the Northern District of Texas pursuant to Fed. R. Civ. P. 4(f)(3). *See* attached DE 10 and DE 12. The Taliban defaulted, and the Default Final Judgment was entered against it. According to Rule 5(a)(2), Federal Rules of Civil Procedure, which provides that, other than a pleading that asserts a new claim for relief, "[n]o service is

---

[4] *See* "Taliban Name Obscure Official as Central Bank Chief with Crisis Looming" *available at* https://www.msn.com/en-xl/asia/afghanistan/taliban-name-obscure-official-as-central-bank-chief-with-crisis-looming/ar-AANEugt

8

required on a party who is in default for failing to appear", no further service is required on the Taliban.[5]

Service on a government agency, in this case Da Afghanistan Bank, is governed by, and can be accomplished pursuant to, 28 U.S.C. § 1608(b)(3)(B), which provides for delivery "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served."

Thus, this Court should direct the Clerk to deliver this motion, and the order and writ of execution that issues pursuant to it, to Da Afghan Bank according to 28 U.S.C. § 1608(b)(3)(B) at the address provided.

After the requested writ of execution is served on the garnishee entity that holds the blocked assets, as well as Da Afghanistan Bank, and appropriate time to respond has passed, Plaintiff will file a motion for turnover order requesting the final release of the assets pursuant to CPLR §5225 to complete the TRIA execution.

### B.  Plaintiffs would be gravely prejudiced by delay

These Plaintiffs, all former American servicemen who returned to Iraq on civilian contracts, were bombed by the Taliban while risking their lives in the hopes of creating a functioning government in Afghanistan.  Because the Taliban now controls Afghanistan and Da Afghanistan Bank, the assets at issue are blocked.

However, the billions of dollars in frozen assets at issue are a "bargaining chip" in current negotiations with the Taliban.  *See* "US Holding Direct and Daily Talks with

---

[5] According to Fed. R. Civ. P. 69, "[a] money judgment is enforced by writ of execution ..." and "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Rules 4 and 5 govern the service of pleadings on the Taliban.

9

Taliban in Effort to Ease Biden's Afghanistan Crisis" *Available at*

https://www.cnn.com/2021/08/19/politics/taliban-talks-salvage-afghanistan-crisis/index.html.

The Taliban is trying desperately to get the funds the U.S. Government has frozen,

unfrozen. *See* "In Quest for Legitimacy and to Keep Money Flowing, Taliban Pushes for

Political Deal with Rivals" *available at*

https://www.washingtonpost.com/world/2021/08/25/taliban-afghanistan-government/. If the

writ attaches now, while the assets are blocked, its effectiveness will survive any subsequent

removal of OFAC sanctions.  But if there is delay, the chance for these Plaintiffs to be

compensated, as Congress intended, could be forever lost.  In sum, to require Plaintiffs to

prove that they have served the Taliban (which defaulted and has no rights to further

service) or Da Afghanistan Bank (which is now in control of the Taliban), before the initial

step of the issuance of a writ would be extremely onerous and prejudicial to Plaintiffs,

effectively denying them of the due process of law.

  By contrast, the Taliban *suffer no harm whatsoever* by the writ of execution being

issued (other than not gaining a possible unfair advantage caused by running out the clock,

a denial of due process which this Court should not facilitate).  Nor does Da Afghanistan

Bank, which has fallen into the Taliban's hands.  Due process is not compromised, but

rather is preserved, by the immediate issuance of the writ.

  Significantly, the New York execution process is a two-step process; it requires a

second motion for turnover order to complete the TRIA execution.  Plaintiffs will file the

turnover motion pursuant to CPLR §5225, and the Taliban and Da Afghanistan Bank will

have ample opportunity to challenge the execution.  As the Eleventh Circuit pointed out in

ruling that the issuance of a writ of garnishment in the first part of a similar two-step

execution process *ex parte* was proper:

> Mere attachment is a minimally intrusive manner of reducing these risks, especially because the blocked assets, by definition, already have more substantial restraints on their alienation. Because the factors weigh in favor of immediate attachment, *Claimants were not constitutionally entitled to a hearing before the writ issued.*

*Stansell v. Revolutionary Armed Forces of Colom*, 771 F.3d 713, 729 (11th Cir. 2014) (citations omitted; emphasis added).

Allowing the writ to issue now, while the assets are frozen, is necessary to ensure the just application of the TRIA. Only by acting now can the Court carry out the law, and ensure that its ruling has impact, the Plaintiffs are compensated, and the Taliban are prevented from accessing approximately $138,000,000.00 (the approximate amount outstanding on Plaintiffs' judgment).[6]

**WHEREFORE**, Plaintiffs respectfully request that the Court consider this matter in an expedited fashion, grant the motion, and:

1) Enter the Proposed Order, attached hereto as Exhibit C.

2) Direct the Clerk to issue the writ of execution attached hereto in Exhibits D.

3) Order the Clerk to deliver, by any form of mail requiring a signed receipt, this motion, and the resulting order and writ, to:

   Da Afghanistan Bank
   Ibni-Sina Watt
   Kabul, Afghanistan

    Respectfully submitted,

    **do Campo & Thornton, P.A.**
    Chase Bank Building
    150 S.E. 2nd Avenue, Ste. 602
    Miami, Florida 33131
    Telephone: (305) 358-6600
    Facsimile: (305) 358-6601

---

[6] Plaintiffs note that this figure represents a mere fraction of the estimated $9 billion in blocked funds, which also must be seen in the context of the $2 trillion the United States invested in Afghanistan, the likely source of these Afghan national reserves in the first place.

By:    s/ *Orlando do Campo*<br>
Orlando do Campo<br>
Bar Code: OD1969<br>
od@dandtlaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 26, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ *Orlando do Campo*<br>
Orlando do Campo