do Campo & Thornton, P.A.                                        ATTORNEYS AT LAW

CHASE BANK BUILDING
150 S.E. SECOND AVENUE • SUITE 602
MIAMI, FLORIDA 33131
PH 305 358 6600 • FAX 358 6601
DANDTLAW.COM

February 18, 2022

**VIA CM/ECF**

Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Hon. Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*Re: John Does 1 Through 7 v. The Taliban et al., No. 20 Misc. 740 (KPF)*

Dear Judge Daniels and Judge Netburn:

The Doe Creditors write to bring the Court's attention to a legal process that, respectfully, has been delayed too long, and that threatens to go off the rails with the inclusion of the Doe Creditors in the September 11 MDL. (DE 54 transferred and reassigned this case to this Court; DE 55 went further, directing the clerk to add the Doe Creditors as interested parties in the multidistrict litigation, 03-md-1570 (the "MDL") to allow the Doe plaintiffs to make filings in the MDL related to the writ of execution.)

The Doe Creditors, who were bombed by the Taliban in 2016, sued and obtained a judgment against them in 2020. In August 2021, the Taliban took over Da Afghanistan Bank, thereby making it the Taliban's agency or instrumentality. As a result, Da Afghanistan Bank's assets were blocked.

The blocked assets of an agency and instrumentality of a terrorist judgment debtor are, as a matter of statutory right and notwithstanding any other provision of law, available for execution to satisfy the compensatory portion of a judgment against the terrorist judgment debtor. Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA").

Given that TRIA provided a clear and straightforward path for the Doe Creditors to execute on their judgments, Doe Creditors promptly, on August 26, 2021, moved to exercise their statutory right to execute against these assets.  DE 15.

The process which Doe Creditors invoked is contingent upon four, and only four, questions:

1) Do Doe Creditors hold a judgment against a terrorist judgment debtor? (Answer:  yes)
2) Is the judgment for an act of terrorism for which the terrorist judgment debtor is not immune? (Answer:  yes)
3) Are the assets they seek to execute blocked assets? (Answer:  yes)
4) Are the blocked assets of the terrorist judgment debtor, or the terrorist judgment debtor's agency or instrumentality?  (Answer:  yes)

The execution proceeding, in which the Court would be presented the evidence of these four factors, has already been delayed for more than five months.  The process now threatens more delay, when none is warranted.  No other party (except for the Havlish Creditors) has anything to say on these questions before the Court.

Except for the Havlish Creditors, who are likewise judgment creditors of the Taliban, and who likewise served a writ of execution on the Federal Reserve Bank of New York, the Doe Creditors have nothing in common with any other member of the MDL in the September 11 litigation, who have not levied writs of execution against the same assets; who do not even hold judgments against the Taliban; and who were not injured in the same attack.  Nor do they have anything in common with many other victims of terrorism throughout the years including and especially those who, unlike the Doe Creditors, have recourse to the VSST.[1]

The Government, in its Statement of Interest and concurrent Executive Order, explicitly blocked $3.5 billion of the assets, and stated that the Doe and Havlish Creditors, whose compensatory awards total approximately $2 billion, could pursue their writs against these blocked assets pursuant to TRIA.  DE 49.  In doing so, the Government created the conditions, that, if the Doe and Havlish Creditors are successful, there would still be approximately $1.5 billion for any other party that might eventually obtain a judgment against the Taliban, and which might eventually obtain a TRIA writ.

Contrary to placing the Doe Creditors in commonality with any other party in the MDL, or any other victim of terror, the Executive Order and Statement of Interest made even more clear that there is no intersection between the adjudication of the Doe Creditors' writ and the claims of any other parties other than the Havlish writ holders. (And, because its actions made even more clear that there are sufficient blocked assets to satisfy the compensatory damages portions of the judgments secured by both the Doe and Havlish writ holders, it mooted any question of priority between those writs.)

---

[1] Of course, all these parties are victims of terrorism, but as a legal matter, there are no commonalities of legal consequence.

This fact is crystal clear: there are two, and only two, post-judgment collection proceedings stemming from similar writs of executions issued against the blocked assets of the Taliban's agency and instrumentality, Da Afghanistan Bank, being held at the Federal Reserve Bank of New York.

For these portions of the Doe and Havlish matters dealing specifically with the writs of executions levied on the Federal Reserve Bank of New York against the assets of Da Afghanistan Bank, and only for those portions, do the Doe Creditors, the "Havlish Creditors, and the Government[2] all seem to agree to the transfer to one judge.

Rule 42(a)(3) allows for the issue of orders to avoid unnecessary cost or delay. Placing the Doe Creditors in the MDL works the opposite effect. The Doe Creditors' case never could have been consolidated with the several September 11 cases not pending in this district through 28 U.S.C. § 1407. It makes little sense to place it in the MDL with the mass of the September 11 claimants now, just because the Doe Creditors have commonality with the Havlish Creditors on one discreet issue.

The Doe Creditors should not be part of the September 11 MDL, and the Court should decisively spurn intervenors who have no legal standing whatsoever to intervene in the Doe Creditors' case.

Sincerely,

Orlando do Campo
Counsel for Plaintiffs
Bar Code: OD1969

---

[2] The Government's view of the matters clearly reveals that the Doe and Havlish Creditors have one overlapping circumstance: their writs. It noted that,

> [w]hile plaintiffs' underlying matters are factually distinct, their writs of execution are directed towards the same party (the Taliban) and the same DAB accounts at FRBNY. The United States' Statement of Interest will apply identically in both matters. Therefore, the same issues and property will potentially be subject to separate consideration in each of these cases at the same time, creating a risk of conflicting orders and substantial duplication of effort by the parties and the Court. In light of these factors, and subject to the Court's discretion, the United States would not object to the transfer to one judge of the portions of these matters dealing specifically with plaintiffs' writs of execution on the DAB accounts at FRBNY.

DE 29 at p. 2.