UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-1570 (GBD)(SN)

OPINION & ORDER

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

    Havlish et al. v. Bin Laden, et al., No. 03-cv-9848
    John Does 1 through 7 v. The Taliban et al., No. 20-mc-740

One hundred and fifty-seven United States government employees injured or killed in a 1998 terrorist attack on U.S. embassies, along with their families, seek to intervene in this multidistrict litigation. ECF No. 7676.[1] Led by plaintiff Milly Amduso (the "Amduso Plaintiffs"), they seek a declaratory judgment finding that neither they nor another set of plaintiffs in this case are entitled to assets of Afghanistan's central bank currently held in the Federal Reserve Bank of New York. These assets have been attached by other plaintiffs who have secured judgments against the Taliban, which has risen to power in Afghanistan.

The Amduso Plaintiffs do not have judgments against Afghanistan. They do not have judgments against the Taliban. They have not attached the contested assets. In short, they have no interest in this action that supports their motion to intervene as of right. That, along with the complication, prejudice, and delay that would result counsels against permissive intervention. Finally, even if intervention was viable, these same factors counsel against extending jurisdiction over this declaratory judgment action.

---

[1] Unless otherwise noted, ECF No. citations are to the multidistrict litigation docket at 03-md-1570.

## BACKGROUND

The impetus for this motion is the sudden legal uncertainty surrounding the funds of the state of Afghanistan's central bank, Da Afghanistan Bank. These funds (the "DAB Funds") are currently held in the Federal Reserve Bank of New York. With the collapse of the Islamic Republic of Afghanistan (the "Islamic Republic") and the concomitant return of the Taliban to power in Afghanistan, the status of these funds has become controversial. The Amduso Plaintiffs wish to inject themselves into the debate.

The controversy began after the Islamic Republic collapsed in August 2021. On August 27, 2021, plaintiffs in Havlish, et al. v. Bin Laden, et al., No. 03-cv-9848 (GBD)(SN) (S.D.N.Y. Dec. 11, 2003), a member case of this multidistrict litigation ("MDL"), obtained a writ of execution targeting the DAB Funds. Havlish, No. 03-cv-9848, ECF No. 526-1. Less than a month later, the United States Government requested that the execution of this writ be stayed so that it could decide whether to file a statement of interest regarding the disposition of those funds. Id., ECF No. 526. The Court granted that stay, ECF No. 7120, as well as two extensions. ECF Nos. 7269, 7632. The Government filed its statement on February 11, 2022. ECF No. 7661. The Havlish Plaintiffs then moved to lift the stay of their writ. ECF No. 7664. That motion is pending.

The Havlish Plaintiffs are not alone in seeking to attach the DAB funds. On December 14, 2020, plaintiffs in John Does 1 through 7 v. The Taliban, et al., No. 20-mc-740, ECF No. 1 (GBD)(SN) ("Doe"), registered a judgment in this District that had been obtained in the Northern District of Texas. They then obtained a writ of execution targeting the DAB Funds. The execution of this writ was also stayed. See Doe, No. 20-mc-740, ECF Nos. 26–28. The Doe Plaintiffs have since moved to lift that stay, and that motion is pending. Id., ECF No. 51.

2

The Doe and Havlish Plaintiffs' efforts are opposed by three firms on the Plaintiffs' Executive Committees ("PECs"). ECF Nos. 7669, 7670, 7675. In addition to opposing the lifting of the stay, they request to be included in any briefing on enforcement proceedings related to the DAB Funds. They also ask the Court to decide pending default judgment motions they have brought against the Taliban.

The Government has not taken a position on the permissibility of satisfying the Doe and Havlish Plaintiffs' judgments with the DAB Funds. Their statement of interest though, raises numerous considerations on how to address possible entitlements to these funds. The first, and most important, of these is that the President has decided to use some of the DAB Funds to address an ongoing humanitarian crisis in Afghanistan. The Government notes that, on February 11, 2022, the President issued an executive order (the "Executive Order") blocking the DAB Funds, which prevents their transfer or withdrawal. ECF No, 7661 at 9, see also ECF No. 7661-1 (copy of the Executive Order). That Executive Order finds that "the widespread humanitarian crisis in Afghanistan . . . and the potential for deepening economic collapse in Afghanistan constitute an unusual and extraordinary threat to the national security and foreign policy of the United States." ECF No. 7661-1 at 1. It further states that the preservation of the DAB Funds "is of the utmost importance to addressing this national emergency and the welfare of the people of Afghanistan." Id.

In service to this goal, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued a license (the "OFAC License") requiring the Federal Reserve Bank of New York to transfer $3.5 billion of the DAB Funds into separate accounts to be maintained for the Afghan people. ECF No. 7661 at 10, see also ECF No. 7661-2 (copy of the OFAC License). The Government reports that this transfer cannot take place until issues with the

3

Doe and Havlish writs are resolved. ECF No. 7661 at 11. Accordingly, it has requested that the Court prioritize addressing any barriers to the implementation of the OFAC License. Id. at 13

Beyond these foreign policy concerns, the Government suggests that the scope of the Havlish writ should be revised to conform to the amount collectable under the Terrorism Risk Insurance Act. It also proposes a framework for addressing the Doe and Havlish Plaintiffs' entitlement to the DAB Funds. Id. at 12–13.

The Amduso Plaintiffs entered the mix on February 16, 2022. ECF No. 7676. These plaintiffs are government employees injured in al Qaeda's 1998 attack on the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, as well as their families and estate representatives. ECF No. 7676-2 at 1. Based on the harms they suffered, the Amduso Plaintiffs brought four lawsuits in the District Court for the District of Columbia.[2]

The full procedural history of these cases is not relevant. It is sufficient to note that neither Afghanistan nor the Taliban were named as defendants. Rather, the complaints name the nations of Sudan and Iran as well as several of their government agencies.[3] Judgments were secured against all of these defendants[4] and these judgments were later registered in this

---

[2] Amduso v. Republic of Sudan, No. 08-cv-1361 (JDB) (D.D.C. Aug. 5, 2008); Wamai v. Republic of Sudan, No. 08-cv-1349 (JDB) (D.D.C. Aug. 5, 2008); Onsongo v. Republic of Sudan, No. 08-cv-1380 (JDB) (D.D.C. Aug. 7, 2008); and Opati v. Republic of Sudan, No. 12-cv-1224 (JDB), (D.D.C. July 24, 2012).

[3] Amduso, No. 08-cv-1361, Compl. at ¶¶ 112–19³, ECF No. 5, Wamai, No. 08-cv-1349, First Am. Compl. at ¶¶ 10–14, ECF No. 5; Onsongo, No. 08-cv-1380, Compl. at ¶¶ 10–14, ECF No. 3, Opati, No. 12-cv-1224, Second Am. Compl. at ¶¶ 283–91, ECF No. 24.

[4] Amduso, No. 08-cv-1361, ECF No. 62, Wamai, No. 08-cv-1349, ECF No. 54; Onsongo, No. 08-cv-1380, ECF No. 41, Opati, No. 12-cv-1224, ECF No. 44.

District.[5] The Amduso Plaintiffs do not suggest, and the Court has not seen evidence, that they have attached the DAB Funds or secured writs of execution against them.

Nonetheless, on February 16, 2022, the Amduso Plaintiffs moved to intervene. ECF No. 7676. They seek a declaratory judgment "that neither [the Havlish Plaintiffs] nor [they] have an explicit right to the Afghan funds, thereby leaving any equitable distribution of Afghan Funds to victims of state-sponsored terrorism holding valid final judgments to the" U.S. Victims of State Sponsored Terrorism Fund ("VSSTF"). ECF No. 7676-3 at 29. Their proposed complaint notes that the Doe Plaintiffs are similarly positioned to the Havlish Plaintiffs. Accordingly, they raise the same objections to the Doe Plaintiffs' efforts. ECF No. 7676-3 at 3 n.1.

## DISCUSSION

The Amduso Plaintiffs may not intervene for two related reasons. First, they cannot make the showing required to intervene as of right. Similar factors, as well as prejudice and delay to the Havlish and Doe Plaintiffs, counsel against permissive intervention. Second, for those same reasons, it would be inappropriate to exercise jurisdiction over this declaratory judgment action.

**I.    The Amduso Plaintiffs Cannot Intervene as of Right and Permissive Intervention Is Inappropriate**

The Amduso Plaintiffs move to intervene as of right under Federal Rule of Civil Procedure 24(a) and for permissive intervention under Federal Rule of Civil Procedure 24(b). Both arguments are unavailing. They do not meet the requirements to intervene as of right and permissive intervention would be inappropriate.

---

[5] Amduso v. Republic of Sudan, et al., No. 14-mc-0233 (Part 1) (S.D.N.Y. July 29, 2014); Onsongo, et al. v. Republic of Sudan, et al., No. 14-mc-0230 (Part 1) (S.D.N.Y. July 29, 2014); Opati, et al. v. Republic of Sudan, et al., No. 14-mc-00231 (Part 1) (S.D.N.Y. July 29, 2014); and Wamai v. Republic of Sudan, et al., No. 14-mc-00232 (Part 1) (S.D.N.Y. July 30, 2014).

### A. The Amduso Plaintiffs Cannot Make the Showing Required to Intervene as a Matter of Right

The Amduso Plaintiffs cannot intervene as of right. Intervention under Rule 24(a) is appropriate when an applicant "(1) files a timely motion; (2) asserts an interest relating to the property . . . that is the subject of the action; (3) is so situated that without intervention the disposition of the action may . . . impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). Failure to meet any of these requirements will result in denial. Id. The decision is committed to the discretion of the district court. Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014).

The Amduso Plaintiffs cannot make this showing. Even if the Court accepted that their motion is timely, they lack the substantial and direct interest required to intervene. They also have other means to protect any hypothetical interest even if this motion is denied. Additionally, the interest they proffer is adequately represented by parties already before the Court.

Beginning with the "interest" element, the Amduso Plaintiffs have no cognizable interest in these funds. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010) (quoting Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir.1990)). Yet the whole aim of the declaratory judgment that the Amduso Plaintiffs seek is to declare that "neither [the Havlish and Doe plaintiffs] nor [the Amduso Plaintiffs] have an explicit right to the Afghan funds . . . ." ECF No. 7676-3 at 29. In effect, they ask to intervene based on a right they wish to declare nonexistent. Quixotically, if they prevail, then they should not have had the right to intervene in the first place.

The Amduso Plaintiffs, however, view themselves on equal footing with the Havlish and Doe Plaintiffs because they all "have the same or similar interest in the Afghan funds as . . . [they] were [all] injured by the same party [i.e., the Taliban] which facilitated the August 1998 and September 2001 acts of terrorism." ECF 767-2 at 14. But these parties do not have the same interest. The Havlish and Doe Plaintiffs have judgments against the Taliban; the Amduso Plaintiffs do not. Any entitlement to the DAB Funds based on the Taliban's liability to the Amduso Plaintiffs is speculatively based on suing the Taliban and securing judgments against it.

The Amduso Plaintiffs' "interests in . . . an equitable distribution of any such funds through the U.S. Victims of State Sponsored Terrorism Fund" is equally unavailing. Id. at 5. In the first place, they identify no right (nor is the Court aware of any) that empowers them to police all possible sources of terrorism funds, including those to which they profess to have no entitlement, and demand that those funds be deposited in the VSSTF.

Moreover, this interest (if it existed) would be also speculative and indirect. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the" requirements for intervention. Washington Elec. Co-op., Inc., 922 F.2d at 97.

Even if the Court were to declare that the DAB Funds are not available to satisfy the Havlish and Doe Plaintiffs' judgments, as the Amduso Plaintiffs seek, there is no certainty that those Funds will be placed in the VSSTF. Nothing that the Amduso Plaintiffs have submitted suggests that, absent the Havlish and Doe Plaintiffs' claims, the DAB Funds are destined for the VSSFT. The OFAC License and Executive Order do not direct this outcome. Moreover, the current sources for the VSSTF's funds are fines and penalties assessed for criminal and civil violations of International Emergency Economic Powers Act (50 U.S.C. § 1701 et seq.) and

Trading with the Enemy Act (50 U.S.C. § 4031 et seq), and as well as assets targeted by the Government in specific, statutorily-designated cases, none of which is this MDL or its member cases. See 34 U.S.C. § 20144(e)(2). None of these sources implicates the DAB Funds.

So, even if the Amduso Plaintiffs are permitted to intervene and succeed, that provides no guarantee that they will also then get DAB Funds through the VSSTF. Their interest, therefore, is too speculative, indirect, and by their own lights, non-existent, to support intervention.

Since the Amduso Plaintiffs have no cognizable interest in the DAB Funds, they are similarly not impeded by being denied intervention. Moreover, it is not the case, as they argue, that "if this Court were to deny Intervenors' motion to intervene, this Court would likely forever deny justice to many victims of terrorism . . . ." ECF No. 7676-2 at 10. As the Havlish Plaintiffs note, if the stay is lifted, the likely next step will be a turnover motion under New York law. ECF No. 7673 at 3. This process provides an opportunity and procedure for adverse claimants to assert their rights to any disputed property. N.Y. CPLR § 5225(b) ("The court may permit any adverse claimant to intervene in the proceeding [against property held by a judgment debtor] and may determine his rights . . . .")

Indeed, in this District, turnover proceedings, when combined with an interpleader proceeding brought under Federal Rule of Civil Procedure 22, are a common device to provide terror victims and third parties holding purported terrorism assets with a means to assert and contest entitlements to those assets. See, e.g., Weininger v. Castro, 462 F. Supp. 2d 457 (S.D.N.Y. 2006); Est. of Heiser v. Bank of Baroda, New York Branch, No. 11-cv-01602 (LGS), 2013 WL 4780061, at *1 (S.D.N.Y. July 17, 2013); Hausler v. JP Morgan Chase Bank, N.A., 127 F. Supp. 3d 17 (S.D.N.Y. 2015). Thus, there is no danger that, if the Amduso Plaintiffs can

find a cognizable interest in the DAB funds, they will be unable to assert it in a turnover proceeding.

Finally, the interests that the Amduso Plaintiffs have asserted are well represented by numerous parties already before the Court. Despite this abundance of litigants, they argue that their interests are not adequately protected because these parties only seek to further their own recoveries. They, conversely, purport to pursue an equitable distribution on behalf of all al Qaeda victims. ECF No. 7676-2 at 13.

There are three problems with this argument. First, several existing parties have the same objective as the Amduso Plaintiffs: to limit or void the <u>Havlish</u> and <u>Doe</u> Plaintiffs' entitlement to the DAB funds. The PECs have opposed the <u>Havlish</u> Plaintiffs' effort to lift the stay. They have also requested to be heard on any effort by the <u>Havlish</u> Plaintiffs to execute on the DAB Funds. They may have different motives, but "a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." <u>Washington Elec. Co-op., Inc.</u>, 922 F.2d at 98. So, while the Amduso Plaintiffs and PECs may have different reasons to oppose the <u>Havlish</u> and <u>Doe</u> Plaintiffs, they share the same objective. The PECs are also composed of capable attorneys who have been litigating in this uniquely complicated MDL environment for years. They are well-placed to make whatever arguments are available regarding the <u>Havlish</u> and <u>Doe</u> writs.

Second, the parties' motives, even if they were relevant, differ less than the Amduso Plaintiffs suggest. The PECs oppose the <u>Havlish</u> and <u>Doe</u> Plaintiffs' writ in order "to allow all of the 9/11 Families who have a judgement against the Taliban to present their claims and arguments in favor of treating the DAB assets fairly and equitably . . . ." ECF No. 7669 at 3, ECF No. 7670 at 2 (requesting the Court maintain the current stay "to allow all of the 9/11 Families

and Survivors who have judgments or pending applications for judgments against the Taliban . . . to present their claims and arguments in favor of treating the DAB property fairly and equitably.") Thus, while these groups may have different views on what constitutes an "equitable distribution" of DAB Funds to a broad array of victims, the view that there *should* be a broad and equitable distribution is well represented.

Finally, the public-minded motives asserted by the Amduso Plaintiffs are also represented by no less an authority than the United States. The Government's statement of interest explicitly recognizes the interests of terror victims in seeking "accountability and compensation" for the "horrific acts" inflicted on them. ECF No. 7661 at 11. Thus, a substantial portion of this statement is dedicated to describing what the Government believes to be the proper mechanism for adjudicating entitlements to the DAB Funds. Id. at 27–35.

In short, there are numerous capable parties already before the Court who have the same objective sought by the Amduso Plaintiffs. The broader public policy interests that they seek to vindicate are represented too. The Court is confident that, between these capable parties, the Amduso Plaintiffs' interests will be ably defended. Because they cannot show their interests will not be adequately represented or that they cannot protect any cognizable interests through alternative avenues, they cannot intervene as of right.

### B. Permissive Intervention Is Inappropriate

Permissive intervention under Rule 24(b) is also inappropriate. Under this Rule, "the Court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of fact or law." Fed. R. Civ P. 24(b)(1)(B). In determining whether to permit this intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"Substantially the same factors [that govern intervention of right] are considered in determining whether to grant an application for permissive intervention . . . ." In re Bank of New York Derivative Litig., 320 F.3d 291, 300 n.5 (2d Cir. 2003). This would already be fatal to the Amduso Plaintiffs' motion. The prejudice and delay that will result from allowing their intervention counsels against permissive intervention as well.

The Havlish and Doe Plaintiffs have filed writs of execution against the DAB Funds. If the stay of those writs is lifted, they will proceed to turnover motions. This will provide a means for adverse parties to contest the Havlish and Doe Plaintiffs' claims to the DAB Funds and assert any cognizable interests of their own. Interpleader actions also "benefit[] the judicial system by condensing numerous potential individual actions into a single comprehensive unit with a resulting savings in court time and energy." 7 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure: Civil § 1702 Nature and Purpose of Interpleader (4th ed. 2019). The resolution of these competing interests will take place against the backdrop of the public policy interests already asserted by the U.S. Government. In short, absent the Amduso Plaintiffs' intervention, this case will proceed along a familiar track that has been reliably used in this District to adjudicate competing claims to purported terrorist assets. Adjudicating the Havlish Plaintiffs' right to these assets, as the Amduso Plaintiffs seek to do here, will already be an inextricable part of this process.

What Amduso Plaintiffs propose is substantially less efficient and would make an already complicated MDL even more unwieldy. A declaratory judgment action is a regular civil action. Int'l Bhd. of Teamsters v. E. Conf. of Teamsters, 160 F.R.D. 452, 455–56 (S.D.N.Y. 1995). This means that, once it is brought, the Court would then have to allow the Amduso Plaintiffs to file a complaint. Then, it would have to resolve this complaint through a mechanism like judgment on

the pleadings or summary judgment. See, e.g., Lucas v. Plan. Bd. of Town of LaGrange, 7 F. Supp. 2d 310, 319 (S.D.N.Y. 1998) ("[A]s a threshold matter, we must determine whether Rule 56 or Rule 12 should govern defendants' motion for declaratory judgement.") Thus, their action would effectively inject a completely new member case into an MDL that already has dozens of cases and thousands of litigants.

It also means that the resulting ruling will likely only bind the actual parties to that declaratory judgment action. See Taylor v. Sturgell, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940)) (internal quotations omitted). So, after the Court adjudicated the Amduso Plaintiffs' action, another party could declare an entitlement to the DAB Funds, and the Court would be forced to adjudicate that claim though another round of declaratory actions and motion practice. Alternatively, any party with a claim on the DAB Funds would somehow have to be made party to the Amduso declaratory judgment action and given an opportunity to be heard. This latter course is simply a less efficient, less procedurally sound turnover procedure with more steps.

All of this would also occur amid an already complex MDL proceeding that has gone on for almost two decades, embroiled thousands of litigants, and is now becoming a roadblock to the implementation of American foreign policy. Devising and executing an inefficient alternative to a turnover proceeding at the behest of a party that self-avowedly has no right to the DAB Funds will delay not only the resolution of the Havlish and Doe Plaintiffs' claims, but the determination of dozens of other issues still pending before the Court.

**II.     The Court Declines to Exercise Jurisdiction Over This Declaratory Judgment**

Even if the Court determined that intervention was viable, it would still, in its discretion, decline to exercise jurisdiction over this declaratory judgment. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Thus, "[t]he Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). Determining whether to exercise this discretion involves:

> [A] simple test that asks . . . whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved . . . whether a judgment would finalize the controversy and offer relief from uncertainty . . . whether the proposed remedy is being used merely for procedural fencing or a race to res judicata . . . whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and . . . whether there is a better or more effective remedy.

Id. at 359–60 (internal quotations omitted).

There is no danger of creating friction between different legal systems and the Court need not opine on whether this motion is "procedural fencing." All the other factors urge that the Court decline to exercise jurisdiction. The judgment is unlikely to settle or meaningfully clarify entitlement to the DAB Funds for any but a small segment of potential claimants. It will not finalize the controversy. Rather, it will prolong and complicate its resolution. Finally, there is a better and more effective remedy: the combination of turnover and interpleader proceedings that have consistently be used to adjudicate rights in cases similar to this one. Accordingly, the Court would decline to exercise jurisdiction over this case even if intervention was viable.

## CONCLUSION

The Amduso Plaintiffs' motion to intervene is DENIED. The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 7676 on <u>In Re Terrorist Attacks</u>, 03-md-1570, ECF No. 572 on <u>Havlish</u>, No. 03-cv-9848, and ECF No. 56 on <u>Doe</u>, 20-mc-740.

**SO ORDERED.**

DATED:   New York, New York
         February 22, 2022

_____
SARAH NETBURN
United States Magistrate Judge