**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DOES 1 THROUGH 7, <br><br> Plaintiffs, <br><br> - against - <br><br> THE TALIBAN *et al.*, <br><br> Defendant. | No. 20 Misc. 740 (KPF) (SN) |
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | No. 03 MD 1570 (GBDN) (SN) |
| FIONA HAVLISH *et al.*, <br><br> Plaintiffs, <br><br> - against - <br><br> SHEIKH USAMAH BIN-MUHAMMED BIN-LADEN, a.k.a. OSAMA BIN-LADEN *et al.*, <br> Defendants. | No. 03 Civ. 9848 (GBD) (SN) |

**MEMORANDUM OF LAW OF *AMICUS CURIAE* PEACEFUL TOMORROWS**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

STATEMENT OF INTEREST OF THE *AMICUS CURIAE* ........................................................ 1

SUMMARY OF ARGUMENT ................................................................................................. 2

ARGUMENT .......................................................................................................................... 2

   I.    The State of Afghanistan Must Be Joined in the Attachment Proceeding .......................... 2

   II.   Attachment of the DAB Assets Should Not Be Allowed. ................................................ 4

CONCLUSION ....................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*De Csepel v. Republic of Hungary*,
  2022 WL 678076, at *14 (D.C. Cir. March 8, 2022) ..................................................................3

*Hausler v. JP Morgan Chase Bank, N.A.*,
  No. 12-1264, ECF No. 133, at 18-19 (2d Cir. Jul. 9, 2012) ......................................................6

*Hausler v. JP Morgan Chase, N.A.*,
  770 F.3d 207, 212 (2d Cir. 2014) ...............................................................................................6

*Heiser v. Islamic Repub. of Iran*,
  735 F.3d 934, 937-40 (D.C. Cir. 2013) ......................................................................................6

*Kirschenbaum v. 650 Fifth Ave.*,
  830 F.3d 107 (2d Cir. 2016) .......................................................................................................2

*NML Capital, LTD v. Banco Central de la Republica Argentina*,
  652 F.3d 172, 195 (2d Cir. 2011) ...............................................................................................2

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ...................................................................................................................3

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1057, 1062 (2019) .....................................................................................................4

*Rubin v. Islamic Repub. of Iran*,
  830 F.3d 470, 480 (7th Cir. 2016) ..............................................................................................8

*United States v. Assa Co.,*
  No. 17-3658, ECF No. 105, at 307 (2d Cir. Aug 31, 2018) .......................................................8

**Statutes**

28 U.S.C. § 1603(a) .........................................................................................................................4

28 U.S.C. § 1608(a) .........................................................................................................................4

28 U.S.C. § 1610.............................................................................................................................5

28 U.S.C. § 1611(b)(1)....................................................................................................................7

Fed. R. Civ. P. 19(a).........................................................................................................................3

**Other Authorities**

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 205(1) ................8

## STATEMENT OF INTEREST OF THE *AMICUS CURIAE*

September 11th Families for Peaceful Tomorrows ("Peaceful Tomorrows") is a non-profit organization founded by family members of those killed on September 11th, 2001 ("9/11"). Peaceful Tomorrows is the oldest 9/11 family organization that has operated continuously since the terror attacks that took the lives of its members' loved ones. The organization aims to promote a more peaceful world, placing a priority on internationally recognized human rights, democracy, and the rule of law. Peaceful Tomorrows brings a unique perspective to this legal proceeding as its members speak for a portion of the 9/11 family community whose voices have not otherwise been heard in the litigation concerning the Da Afghanistan Bank ("DAB") funds.

Peaceful Tomorrows has always had a specific aim of supporting the Afghan people. The organization has lobbied Congress for an Afghan victims fund, sent committee members on delegations to Afghanistan to better understand the toll the war on terror has taken on the Afghan people, and continuously advocated for the needs of Afghan civilians. Peaceful Tomorrows believes that the claim to these funds by the *Havlish* plaintiffs, other 9/11 family lawsuits, and other plaintiffs is misguided, as the DAB funds never belonged to the Taliban. Peaceful Tomorrows agrees with arguments put forward in the Statement of Interest of the United States of America: that the government of the United States does not recognize the Taliban as the legitimate government of Afghanistan, and that the State of Afghanistan was never named a state sponsor of terrorism. Therefore, the claim to these funds by *Havlish* and other plaintiffs is in error.

The war in Afghanistan was waged in 2001 in the names of the family members lost in 9/11. On top of twenty years of war, the situation of all Afghans has been made worse by the collapse of the Afghan economy largely as a result of the impoundment of the DAB funds. The entire nation is now on the brink of a humanitarian crisis of monumental proportions. Peaceful Tomorrows agrees with 9/11 families seeking rightful compensation for their losses. However,

Peaceful Tomorrows believes that attaching the DAB Assets is not the proper avenue to seek such compensation and that this attachment would clearly cause further harm to innocent Afghans. The DAB money belongs to the Afghan people and should be released solely for their benefit.

## SUMMARY OF ARGUMENT

The attachment proceeding cannot properly continue without the joinder of the State of Afghanistan, because it is an indispensable party to the proceeding.

Attachment should not be allowed in any event, because the State of Afghanistan, not the Taliban, is the owner of and entitled to the DAB Assets. A contrary determination would have the legal consequence of treating the State of Afghanistan as a state sponsor of terrorism, when it has never been designated as such. *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016), is not controlling; it had no occasion to consider the peculiar factual situation presented here.

## ARGUMENT

**I.   The State of Afghanistan Must Be Joined in the Attachment Proceeding.**

The United States has raised a number of important considerations relevant to the decisions to be made in this proceeding in a Statement of Interest ("SOI") filed February 11, 2022 (Case No. 03-md-01570, ECF #7661). Among these is that "while the 'funds of foreign central banks' are managed through those banks' accounts in the United States, those funds are, in fact, the 'reserves of the foreign states' themselves." SOI at 24 (quoting *NML Capital, LTD v. Banco Central de la Republica Argentina*, 652 F.3d 172, 195 (2d Cir. 2011) (quoting H.R. Rep. No. 94-1487 at 31, *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6630) (brackets omitted)). Because it clearly has "an interest relating to the subject of the action [*i.e.*, the "DAB Assets"] and is [so] situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest," Fed. R. Civ. P. 19(a), the

***State of Afghanistan*** must be considered a "required" party. *See Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008).

In such a circumstance, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). One might consider whether the participation of Afghanistan's central bank, DAB, in the proceeding would suffice. Arguably, it would suffice if the State of Afghanistan's "interests are so aligned with those of the remaining [party, DAB,] that [DAB's] participation in the litigation protects [the State of Afghanistan] against potential prejudice from the suit proceeding in [the state's] absence." *De Csepel v. Republic of Hungary*, 2022 WL 678076, at *14 (D.C. Cir. March 8, 2022). But if the *Doe* and *Havlish* plaintiffs have been clear about one thing, it is that, currently, DAB's interests are definitely ***not*** aligned with the interests of the State of Afghanistan, because DAB is being controlled by the Taliban and is serving the ends of the Taliban, not the ends of the State of Afghanistan or of the Afghan people. Consequently, even if DAB were properly joined in the proceeding,[1] the proceeding still could not go forward without the joinder of the State of Afghanistan. The State of Afghanistan is an indispensable party to this proceeding.

As a foreign state as defined in 28 U.S.C. § 1603(a) (a provision of the Foreign Sovereign Immunities Act ("FSIA")), the State of Afghanistan must be served in accordance with the service rules set forth in 28 U.S.C. § 1608(a).[2] Strict compliance with the hierarchy of steps set

---

[1] It is not clear that such steps as the *Doe* and *Havlish* plaintiffs have taken to make service on and otherwise give required notices to DAB conform to the service requirements of the FSIA.

[2] "'[T]o the extent that the DAB Assets are the property of the State of Afghanistan, the Court may consider whether the Judgment Plaintiffs have provided adequate notice to the State consistent with the provisions of FSIA. *See* 28 U.S.C. §§ 1608, 1610(c).'" SOI at 25 n.8. Adherence to proper procedures should be of concern especially where central bank deposits at the Federal Reserve Bank of New York ("FRBNY") are concerned. A significant portion of global exchange reserves are held in U.S. dollars at the FRBNY. A failure properly to protect such reserves from unwarranted attachment and execution could cause states

3

forth in § 1608(a) is required in order to make proper service; "the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction." *Republic of Sudan v. Harrison*, 139 S. Ct. 1057, 1062 (2019). In the event that proper service under § 1608(a) cannot be made for a period of time, this proceeding should be suspended until such time as service is made.

## II.     Attachment of the DAB Assets Should Not Be Allowed.

The *Doe* and *Havlish* plaintiffs contend that the decision in *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016), is controlling. However, as the United States has observed, "[t]he Second Circuit had no occasion in that case to consider whether, and under what circumstances (if any), an agency or instrumentality of a foreign state can simultaneously also be an agency or instrumentality of a non-state entity. . . . [T]he relevant legal considerations may differ when a court is asked to assess whether a foreign state, including its agency or instrumentality, can also act as an agency or instrumentality of a non-state entity." SOI at 22. And, if two such simultaneous existences are possible, it leads to the further conundrum of which of these is actually the owner of the property at issue.

DAB is undeniably an "agency or instrumentality" under both the FSIA and the Terrorism Risk Insurance Act of 2002, *codified at* 28 U.S.C. § 1610 note ("TRIA"), as interpreted by *Kirschenbaum*. The property, as the property of a foreign state agency or instrumentality, would not be subject to attachment unless the State of Afghanistan had been designated as a state sponsor of terrorism. *See* TRIA §§ 201(d)(4), 201(a). An order exposing the property to attachment would treat the State of Afghanistan as having been designated as a

---

to move their reserves to other jurisdictions.

state sponsor of terrorism:[3] "Where a state is not designated as a state sponsor of terrorism, TRIA does not authorize the attachment of a foreign state's assets to satisfy a judgment against the foreign state. Permitting a foreign state's assets to be attached indirectly to satisfy the judgment against a nonstate terrorist organization would supplant the discretion that Congress afforded to the Executive Branch in designating state sponsors of terrorism." SOI at 27 n.9.

This unacceptable result can be avoided if it is determined, correctly, that the State of Afghanistan, not the Taliban, is the owner of the property. As far as U.S. law is concerned, the Taliban cannot claim to own the property through DAB as the recognized government of the State of Afghanistan and as legitimately entitled to operate DAB on behalf of the State; "the United States has not yet made a decision as to whether to recognize the Taliban or any other entity as the Government of Afghanistan or as part of such a government." SOI at 26. Moreover, "'a regime not recognized as the government of a state is not entitled to property belonging to that state located in the United States.' RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 205(1)." SOI at 26.

Where there is a judgment against a terrorist party on a claim based upon an act of terrorism, TRIA § 201(a) subjects to attachment "the blocked assets *of* that terrorist party" and "the blocked assets *of* any agency or instrumentality of that terrorist party" (emphasis added). Thus, it is necessary to determine "whether a terrorist party (or an agency or instrumentality thereof) has an ownership interest in the DAB Assets." SOI at 20. *See, e.g.*, *Heiser v. Islamic Repub. of Iran*, 735 F.3d 934, 937-40 (D.C. Cir. 2013) (applying TRIA § 201 only against assets that the terrorist party owns); *Hausler v. JP Morgan Chase, N.A.*, 770 F.3d 207,

---

[3] It does not matter whether this occurs "either expressly or by implication." SOI at 27. Plaintiffs seem to imply that the legal implications will not exist if the Court just does not articulate them. Even if the Court does not say the exact words, the legal implication, and the result, would still be there.

5

212 (2d Cir. 2014). This ownership requirement is consistent with the common law principle that "a lienholder enjoys rights in property no greater than those of the debtor himself." *See* U.S. Br., *Hausler v. JP Morgan Chase Bank, N.A.*, No. 12-1264, ECF No. 133, at 18-19 (2d Cir. Jul. 9, 2012). TRIA's "statutory language reflects a legislative choice to focus TRIA attachment on the terrorist party itself, and not to authorize the unpredictable, varied, and potentially problematic effects that could arise if TRIA were read more broadly." U.S. Br., *Calderon-Cardona v. Bank of N.Y. Mellon*, No. 12-75, ECF No. 210, at 15 (2d Cir. Sept. 21, 2012). To the question of ownership presented here, the United States has already provided the answer: "To the extent the assets of a foreign central bank represent the foreign state's reserves, such assets belong necessarily to the ***foreign state*** and thus would not be the assets of a private party." SOI at 25 (emphasis added).

*Kirschenbaum* does not compel a different result.[4] That case involved an effort by plaintiffs with judgments against Iran, a designated state sponsor of terrorism, to enforce the judgments against Iran's assets. There was no competing claim to ownership of the assets at issue.[5] *Kirschenbaum* also did not involve foreign central bank assets. These are provided special protection under the FSIA. *See* 28 U.S.C. § 1611(b)(1). It is true that under TRIA, the FSIA's immunities and exemptions are inapplicable, but as the United States has noted, "there would be a series of potential implications to a determination that the DAB Assets are the

---

[4] It is not altogether clear that the reasoning of *Kirschenbaum* is actually mandated by TRIA, or that its reasoning took into account all of the various factual scenarios that might arise. "The Second Circuit's unitary interpretation [of the term 'agency or instrumentality' in TRIA] was not compelled by the text and appears to be a novel conclusion." *Foreign Relations Law - Foreign Sovereign Immunities Act Terrorism Exceptions - Second Circuit Holds that the Terrorism Risk Insurance Act, but not the FSIA, Allows Recovery against U.S. Companies Owned by State Sponsors of Terrorism*, 130 Harv. L. Rev. 1257, 1263 (2017).

[5] The United States has pointed out that "[i]n applying *Kirschenbaum*, the *Caballero* court [*Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, No. 20-MC-0040-LJV (W.D.N.Y. Dec. 18, 2020)], did not pass upon whether the assetholder's status as a state-owned entity required a different analysis." SOI at 27 n.9. *See id.* at 23.

property of a central bank. [6]  To the extent the assets of a foreign central bank represent the foreign state's reserves, such assets belong necessarily to the ***foreign state*** . . . ."  SOI at 24-25.

Finally, TRIA § 201(a)'s "notwithstanding any other provision of law" language does not expose to attachment all properties which judgment creditors holding terrorism-related judgments might wish to attach.  "TRIA's 'notwithstanding' clause should not work like 'legal kryptonite.'"  U.S. Br., *United States v. Assa Co.,* No. 17-3658, ECF No. 105, at 307 (2d Cir. Aug 31, 2018).  Where TRIA does not actually conflict with other U.S. law and can be interpreted harmoniously with other law, it should be so interpreted.  And, as the United States has observed, "exceptions to execution immunity are, as a general matter, to be narrowly defined."  SOI at 26.  "Seizing a foreign state's property is a serious affront to its sovereignty."  *Rubin v. Islamic Repub. of Iran*, 830 F.3d 470, 480 (7th Cir. 2016).  *See* SOI at 26.  There is always also the issue of reciprocity—that what a U.S. court does to foreign property may be done by a foreign court to U.S. property: "Correspondingly, judicial seizure of a foreign state's property carries potentially far-reaching implications for American property abroad."  *Rubin*, 830 F.3d at 480.  *See* SOI at 26.

---

[6] The House of Representatives report to the FSIA observed that without the necessary sovereign immunity protection, "deposit of foreign funds in the United States might be discouraged." H.R. REP. NO. 94-1487, at 31 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6630.  Even before the FSIA was enacted, Acting State Department Legal Adviser Charles Brower noted that without an effective immunity regime for central banks, "[s]ome governments might ultimately remove all or a substantial portion of their reserves . . . [and] place their dollar reserves with commercial banks abroad, while others might seek to move their reserves into other currencies. In either event, withdrawal of foreign official funds could have an unsettling effect on foreign exchange markets, which would be contrary to the United States interest in international monetary stability." Letter from Charles N. Brower, U.S. Dep't of State Acting Legal Adviser, to Elliot L. Richardson, Attorney General (July 24, 1973), *quoted in* Arthur W. Rovine, Dep't of State, Digest of United States Practice in International Law 228–29 (1973).

7

## CONCLUSION

For the reasons set forth above, the DAB Assets should not be made subject to attachment. This is an appropriate result. The DAB Assets in their entirety should be preserved until such time as the State of Afghanistan is able to make use of them for the benefit of the Afghan people, as determined by the U.S. Executive Branch through its recognition practice.

Respectfully submitted,

s/ Jacob M. Kaplan
Jacob M. Kaplan
Baker & McKenzie LLP
452 Fifth Avenue
New York, N.Y. 10018
Phone: 212-891-3896
Jacob.Kaplan@bakermckenzie.com

Dated: April 21, 2022              *Attorney for Amicus Curiae*