UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1 THROUGH 7,<br><br>      Plaintiffs,<br><br>    *v.*<br><br>THE TALIBAN, *et al.*,<br><br>      Defendants. | No. 20 Misc. 740 (KPF) |
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2011 | No. 03 MD 1570 (GBD) (SN) |
| FIONA HAVLISH, *et al.*,<br><br>      Plaintiffs,<br><br>    *v.*<br><br>SHEIKH USAMAH BIN-MUHAMMED BIN-LADEN, a.k.a. OSAMA BIN-LADEN, *et al.*,<br><br>      Defendants. | No. 03 Civ. 9848 (GBD) (SN) |

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**
**IN SUPPORT OF NO PARTY**

His Excellency Mr. Naseer A. Faiq respectfully moves this Court for leave to file the accompanying brief as *amicus curiae*. The *Havlish* Plaintiffs "take no position at this time" on Mr. Faiq's motion for leave, and the *Doe* Plaintiffs "do not consent" to Mr. Faiq's motion.

Mr. Faiq is currently the head the Permanent Mission of Islamic Republic of Afghanistan (Afghanistan) to the United Nations (UN) in New York. He assumed the position of Chargé d'Affaires (Permanent Representative) after Afghanistan's former representative resigned from the position in December 2021. Prior to joining the Mission in September 2019, Mr. Faiq served Afghanistan as a diplomat for nearly two decades in various senior-level capacities. The Taliban opposes Mr. Faiq's service in his current role as Permanent Representative on the grounds that he does not represent the Taliban regime. Indeed, Mr. Faiq has openly and staunchly opposed their devastating takeover of Afghanistan in August 2021.

The interests of Afghanistan and the Afghan people would be radically impacted by the turnover of the Da Afghanistan Bank (DAB) assets, but their voice has yet to be heard in these proceedings. Through his proposed brief, Mr. Faiq seeks to provide his unique and crucial perspective of Afghanistan, to enable the Court to adjudicate the issues before it on a more informed and complete basis. *See SEC v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021) (participation as amicus is appropriate when, *inter alia*, "a party is not represented . . . or when the amicus has unique information or perspective that can help the court" (citation omitted)).

The proposed brief seeks to elucidate a jurisdictional point that has not been addressed by the parties, or as yet by other proposed *amici curiae*. It explains why the DAB assets—the sovereign assets of the state of Afghanistan, and not the Taliban—are immune from attachment under the Foreign Sovereign Immunities Act (FSIA), and why the Court lacks jurisdiction to

1

order them turned over to satisfy judgments against the Taliban. The Terrorism Risk Insurance Act (TRIA) abrogates the attachment immunity of a foreign state's assets if it has been designated a state sponsor of terrorism by the U.S. Secretary of State; it has no application here for the sole reason that Afghanistan is not—and has never been—designated as such. Even if the TRIA could be read to abrogate Afghanistan's attachment immunity, U.S. courts are still not permitted to exercise jurisdiction over a foreign state's property absent jurisdiction over the state itself, which the Court does not have over Afghanistan. Moreover, the TRIA only authorizes the Court to execute on property that actually belongs to the judgment debtor (here, the Taliban). The Taliban has not been recognized by the U.S. government as the legitimate government of Afghanistan, and the DAB assets remain the exclusive property of the State of Afghanistan.

      Mr. Faiq also proposes to highlight the devastating consequences that executing on the DAB assets would have on Afghanistan, as well as the international economy, and particularly the United States. Authorizing the turnover of Afghanistan's central bank reserves would seriously impede the Afghan people's hope of someday enjoying the freedom and democracy that they aim to establish—the achievement of which depends on their access to their foreign reserves. Moreover, authorizing turnover of central bank assets to satisfy judgments against a nonstate entity would constitute a radical departure from the longstanding principle of central bank immunity, and would considerably destabilize the international financial system and New York's place at the center of it.

      To be clear, Mr. Faiq fully supports compensation for victims of the horrific acts of the Taliban, including the Plaintiffs in this matter who have justly obtained judgments against the Taliban. Mr. Faiq does not challenge the validity of those judgments in any way, nor the right of Plaintiffs to seek their satisfaction. Mr. Faiq, however, disagrees with the notion that

compensation for the acts of terror wrought by the Taliban should come from the Afghan people, who are not responsible for the tragic events of September 11, 2001, and who have likewise been victimized by the Taliban.

Accordingly, Mr. Faiq respectfully requests that the Court exercise its discretion to grant him leave to file the accompanying brief, which will aid in resolving the matter before the Court.

Dated: April 24, 2022                                      Respectfully submitted,

*/s/ Natasha Arnpriester*
Natasha Arnpriester (5673678)
James A. Goldston*
A. Azure Wheeler (5245493)
Open Society Justice Initiative
224 West 57th Street
New York, NY 10019

*/s/ Justin B. Cox*
Justin B. Cox*
Law Office of Justin B. Cox
P.O. Box 1106
Hood River, OR 97031

*Counsel for Amicus Curiae*

\* *Pro hac vice* application forthcoming

3

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2022, I electronically filed the foregoing with this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Natasha Arnpriester
Natasha Arnpriester