IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOES 1 THROUGH 7,

     *Judgment Creditors,*

v.

THE TALIBAN, AL-QAEDA,
 and THE HAQQANI NETWORK,

     *Judgment Debtors.*

Misc Action No. 1:20-mc-00740-GBD

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF
MOTION FOR WRIT OF EXECUTION AND FOR POST-JUDGMENT ATTACHMENT**

March 20, 2023

**TABLE OF CONTENTS**

I.    INTRODUCTION AND PROCEDURAL HISTORY ......................................................1

II.   ARGUMENT .......................................................................................................6

    A.    Legal Standard ...........................................................................................6

    B.    Doe Creditors Were and Are Entitled to an Article 52 Writ of Execution
        Based Upon their Motion Filed in April 2021 ..........................................7

    C.    Doe Creditors Are Entitled to a Writ of Attachment Pursuant to N.Y.
        C.P.L.R. § 6212 ........................................................................................8

   1.    The Doe Creditors Have Valid Causes Of Action ....................................9

   2.    The Doe Creditors Have Established A Likelihood Of Success On The Merits
      Within The Meaning Of N.Y. C.P.L.R. § 6212(a)....................................9

   3.    Doe Creditors' Final Judgment Establishes Grounds For Attachment Pursuant
      To N.Y. C.P.L.R. § 6201(5)...................................................................11

   4.    The Doe Creditors Are Not Required To Show A Need For The Attachments ......12

   5.    Doe Creditors Have A Need For The Attachments .................................12

III.  CONCLUSION ................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Astrea United Invest., L.P. v. Onitiri*, 92-Civ-0581-MBM, 1992 U.S. Dist. LEXIS 17586 (S.D.N.Y. Nov. 18, 1992)................................................................................................9, 12

*Em Ltd. v. Republic of Arg.*, 2009 U.S. Dist. Lexis 74184 (S.D.N.Y. August 19, 2009)...............6

*Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022) ..................*passim*

*Pantheon Props. v. Houston,* 2022 U.S. Dist. Lexis 45061 (S.D.N.Y. March 14, 2022) ...............8

*Ross v. Thomas*, 2011 U.S. Dist. LEXIS 60444 (S.D.N.Y. June 6, 2011) ....................................6

*Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072 (S.D.N.Y. 1996) ...................................................7

*Stansell et al., v. Revolutionary Armed Forces of Colombia (FARC) et al.*, 1:16-mc-00405-LGS-SN (S.D.N.Y.) ........................................................................................................................1, 10

**Statutes**

N.Y. C.P.L.R. Art. 52 .........................................................................................................2, 5, 6, 7

N.Y. C.P.L.R. § 5225 ......................................................................................................................3

N.Y. C.P.L.R. § 5229 ......................................................................................................................7

N.Y. C.P.L.R. § 5232 ...................................................................................................................1, 2

N.Y. C.P.L.R. § 5234 ......................................................................................................................1

N.Y. C.P.L.R. Art. 62 ...................................................................................................................7, 8

N.Y. C.P.L.R. § 6201 ..............................................................................................................*passim*

N.Y. C.P.L.R. § 6212 .............................................................................................................8, 9, 11

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107–297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note)...................................................................................*passim*

**Rules**

Fed. R. Civ. P. 4 ...............................................................................................................................3

Fed. R. Civ. P. 5 ...............................................................................................................................3

Fed. R. Civ. P. 64 ...................................................................................................................6, 7, 8

Fed. R. Civ. P. 69 ......................................................................................................................6

## I.      INTRODUCTION AND PROCEDURAL HISTORY

Judgment Creditors *John Does 1 through 7* (the "*Doe* Creditors"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Reconsideration of their *Ex Parte* Motion for Writs of Execution (Dkt. 8) concerning the blocked assets of Samark Jose Lopez Bello ("Lopez Bello") and/or Yakima Trading Corporation ("Yakima"), and for Post-Judgment Attachment against those assets pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA") and New York attachment and execution procedures.

Doe Creditors file the instant motion at this time out of an abundance of caution. Along with other creditors,[1] the Doe Creditors have attached the blocked assets of Lopez Bello and Yakima held at two banks by virtue of their April 12, 2022, delivery to the U.S. Marshal of an original Writ of Execution issued by the clerk against these blocked assets (*see* Exhibit A; *see also* unnumbered docket entry dated April 12, 2022), along with 2 versions of Form USM-285, one which requested the Marshal to serve the Writ of Execution upon Citibank, N.A., and the other which requested the Marshal to serve the Writ of Execution upon JP Morgan Chase. *See* Exhibit B, Declaration of Daniela Jaramillo. Thus, Doe Creditors have accomplished levy (*see* N.Y. C.P.L.R. § 5232(a)) and have established their priority position (*see* N.Y. C.P.L.R. § 5234(b)) with respect to the blocked assets of Lopez Bello and Yakima held at these two banks.[2]

After the issuance of the Writ of Execution, however, the Second Circuit vacated a writ

---

[1] *See* e.g. *Stansell et al., v. Revolutionary Armed Forces of Colombia (FARC) et al.*, 1:16-mc-00405-LGS-SN (S.D.N.Y.).

[2] Although Doe Creditors delivered the Writ of Execution on the Marshal, the Marshal has not yet served copies on the banks; thus the clock has not yet start to run on expiration. *See* N.Y. C.P.L.R. § 5232(a).

of execution in a TRIA proceeding, holding that it was legal error for a district court to grant a motion for a writ of execution without considering whether the assets were blocked and whether the party whose assets were to be restrained by the execution was an agency or instrumentality of the judgment debtor. *See Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022).

The Doe Creditors do not believe that *Levinson* should have any impact on their Writ of Execution concerning the blocked assets of Lopez Bello and Yakima. In *Levinson*, the Second Circuit rightfully found error in the issuance of a writ, supposedly pursuant to TRIA, that imposed a restraint on formerly unrestrained assets of a functioning bank without there being any findings whatsoever of the rationale to support it. The Second Circuit held that "before ordering assets to be *seized* under TRIA …", a plaintiff must first establish the target property holder's status as an agency or instrumentality of the terrorist party. *Id*. at 97 (emphasis added). Here, by contrast, the assets of the international fugitive Lopez Bello and his front company Yakima were blocked by the U.S. Government long before the clerk issued the Writ of Execution. The assets had long been sequestered by the banks. They were in no way "seized" by the issuance of the Writ of Execution. Under these facts, and in any case involving blocked assets that are already restrained, there is no risk that any deprivation will be suffered as the result of the writ. Thus, *Levinson* can, and should, be distinguished on its facts, and its application limited to situations in which the assets are not already restrained. In a case like this one, the longstanding process of executing against already blocked assets located in New York State via a two-step application of N.Y. C.P.L.R. Art. 52—in which a writ of execution is issued and delivered to the marshal, thereby serving to attach the assets for purposes of priority as provided by N.Y. C.P.L.R. § 5232, and then, after the writ is served on the bank and the notice is provided to interested parties as

2

provided by N.Y. C.P.L.R. § 5225(b), a turnover proceeding is filed in which the alleged

agencies and instrumentalities have full opportunity to contest all allegations before their assets

are turned over—still makes practical sense. Such process runs no risk of due process violations

in a case such as this one, where the assets are already restrained.

But there is a second reason that *Levinson* works no harm on the Writ of Execution

here—Doe Creditors in fact satisfied *Levinson* before *Levinson* was decided. A year prior to the

date they obtained the Writ of Execution, that is, on April 30, *2021*, Doe Creditors had filed their

*Ex Parte* Motion for Writ of Execution seeking the very writ they eventually obtained. Dkt. 8. In

that motion, Doe Creditors provided evidence in satisfaction of all of the elements that *Levinson*

later called for, including an extensive expert declaration establishing the direct operational

nexus between the major international narcotics trafficker and money launderer Lopez Bello and

his front company on the one hand, and the international terrorist judgment debtors Al-Qaeda,

the Taliban, and the Haqqani Network on the other, and concluding that:

> Due to the direct links between the El Aissami network and Middle Eastern
> terrorist groups, and the illicit services that El Aissami frontman Lopez Bello and
> the Yakima companies provide to Al Qaeda, the Taliban, and the Haqqani
> Network, it is my opinion that Samark Jose Lopez Bello and Yakima Trading
> Corporation are agencies and instrumentalities of Al Qaeda, and through Al
> Qaeda as well as other connections, the Taliban and the Haqqani Network.

Dkt. 8-5.

The Honorable Judge Failla, however, refused to consider the merits of the motion.

Despite the fact N.Y. C.P.L.R. § 5225(b) merely required "notice" of the proceedings to an

account holder, Judge Failla ruled that the international fugitive Lopez Bello and his front

company should be served pursuant to the requirements of Federal Rules of Civil Procedure 4

and 5 (and would not accept alternate notice to his attorneys appearing on his behalf concerning

these assets). *See* Dkt. 14. More importantly, Judge Failla required that such service must be

achieved *before* the writ against the already-blocked assets could issue.[3] Doe Creditors were thwarted. Their motion was not considered on the merits, and they did not get the Writ of Execution at that time.

Three months later, Judge Failla dispensed with the entire rubric of pre-writ notice that she had just imposed on Doe Creditors, and instructed Doe creditors that the proper process for obtaining a writ of execution is to simply go to the clerk and get it.[4] Doe Creditors followed the Court's instructions, and, on April 12, 2022, obtained the Writ of Execution concerning the Lopez Bello and Yakima Trading assets that they had requested prior. Had Judge Failla simply considered the April 2021 motion, then Doe Creditors would have had the findings of "blocked assets" and "agency and instrumentality" that were later required by *Levinson* in the context of unrestrained assets. Further, it is clear from *Levinson* that the Second Circuit does not consider that litigants seeking to enforce TRIA writs cannot proceed *ex parte*. To the contrary, the *Levinson* Court, by suggesting a post-judgment writ of attachment pursuant to N.Y. C.P.L.R. § 6201(5) was available to plaintiffs desiring to restrain assets so they not be dissipated (*see Levinson* 44 4th at 98), clearly revealed that it approves of pre-notice attachment in TRIA cases.

---

[3] By requiring service *prior* to the issuance of a writ, Judge Failla espoused a dangerous rule whereby the debtor gets notice of a writ before it is served.

[4] At that time, Doe Creditors were seeking a writ to execute against the assets of Da Afghanistan Bank by emergency motion. Judge Failla delayed consideration of the motion, despite Doe Creditors' warnings and objections that delay prejudiced Doe Creditors (*see* Dkt.20) until after a competing creditor had served a writ concerning the same assets. She then denied the motion for the writ and laid the blame for the delay on Doe Creditors, stating that they should not have filed a motion, but rather that "the proper process for issuance of a writ of execution against property in this District is to send a physical copy of the writ of execution … directly to the Orders and Judgments Clerk …". Dkt. 26.The Honorable Magistrate Netburn later likewise faulted Doe Creditors, finding their motion had "failed to comport with the requirements for seeking a writ of execution". Dkt. 117.

Although Doe Creditors' maintain that *Levinson* is limited to situations in which the assets were not prior restrained, and so believe it has no impact upon their current Writ of Attachment issued pursuant to explicit instructions and before *Levinson*, Doe Creditors understandably want belts and suspenders in this case, where there has been such confusion and fluidity concerning the proper procedures in both the district and appellate courts. Thus, to avoid any question as to *Levinson's* impact on the existing Writ of Execution, and because Doe Creditors were denied consideration of their April 30, 2021 motion, Doe Creditors hereby request that their April 30, 2021, motion (Dkt. 8) be reconsidered, so that the preliminary findings that would have been made at that time had the motion been considered on its merits— including that the assets at issue are blocked assets and that Lopez Bello and Yakima Trading are agencies or instrumentalities of the terrorist judgment debtors in this case—are made.

Additionally, because the Second Circuit suggested in *Levinson* an alternative to an Article 52 execution proceeding—that the judgment creditors in that case could have achieved the same outcome of attaching the assets by seeking a post-judgment writ of attachment pursuant to N.Y. C.P.L.R. § 6201(5)—Doe Creditors seek, as suspenders, such writ of attachment.

What is undeniable is that Doe Creditors have a right to a writ that attaches the assets. As the *Levinson* Court emphasized, "TRIA states that blocked assets '*shall* be subject to execution or *attachment* in aid of execution.' § 201(a) …". *Levinson*, 44 F.4th at 98 (emphasis in original). Thus, if the court has any question concerning whether the current writ serves as a valid attachment given the unsettled landscape at the Second Circuit, it should take all reasonable steps to ensure that it is, especially in light of Doe Creditors' wholly proper request, made way back in April of 2021, for a writ that would attach the blocked assets. Dkt. 8. The Court, respectfully, should see the wisdom in belts and suspenders in these circumstances, and both reconsider and

grant the motion for of the Writ of Execution (making findings in support), as well as grant the instant motion for a Writ of Attachment.

## II.   ARGUMENT

### A.   Legal Standard

"Under the Federal Rules of Civil Procedure, a federal court employs the attachment and execution procedures provided by the law of the state in which the court sits.  *See* Fed. R. Civ. P. 64 (referring to state law for pre-judgment attachment procedures); Fed. R. Civ. P. 69 (referring to state law for post judgment execution procedures). The New York Civil Practice Law and Rules ("CPLR") therefore govern the attachment and restraint of assets." *Em Ltd. v. Republic of Arg.*, 2009 U.S. Dist. Lexis 74184 *10 (S.D.N.Y. August 19, 2009).

While state procedure governs the *method* by which the Court exercises its powers to effectuate this TRIA collection, whether the Court is empowered (and compelled) to do so is governed by federal law.  *See e.g. Ross v. Thomas*, 2011 U.S. Dist. LEXIS 60444, at *15 (S.D.N.Y. June 6, 2011) (holding that whether a court can exercise equitable power to appoint a receiver is governed by federal law). Here, there is an animating federal law, TRIA, and it specifically provides that blocked assets "*shall* be subject to execution *or attachment in aid of execution* . . .". TRIA § 201(a) (emphasis added). TRIA not only empowers, but mandates, the issuance of some form of attachment to aid the judgment creditors in execution.

For more than two decades, courts in New York fulfilled their federal mandate to effectuate terrorism judgment creditors' rights to attachment by allowing litigants to use the execution process of N.Y. C.P.L.R. Art. 52 to obtain what effectively were pre-final writs of attachment that they would then follow with turnover motions—the two-step process described

above. That process was, and is, wholly consistent with the court's mandate to carry out federal law through state procedure.

But that is not the only way a federal court could do it. Indeed, Rule 64 has been interpreted to allow federal courts to make broad use of New York procedure to craft remedies that effectuate the purpose of securing judgments through attachment. For example, in *Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996) the Southern District of New York held that an injunction pursuant to N.Y. C.P.L.R. § 5229 was available because it "is designed to 'secure satisfaction of the judgment ultimately to be entered in the action' as provided for in FRCP 64" and that it "has substantially the same effect as an attachment". And, as the *Levinson* court stated, "pre-execution attachment" is available as one of the possible "interim remedies" in a proceeding to enforce a money judgment under TRIA because the proceeding involves a "cause of action" that is "based on a judgment". *Levinson*, 44 F.4th at 98.

Thus, Doe Creditors request that their rights to attachment be secured through the Article 52 execution, as well as Article 62 attachment, as follows.

**B.     Doe Creditors Were and Are Entitled to an Article 52 Writ of Execution Based Upon their Motion Filed in April 2021**

As Doe Creditors put forth in April 2021, they met the four basic requirements that a judgment creditor must meet to invoke rights to execution or attachment pursuant to TRIA: 1) a judgment against terrorist parties; 2) based on an act of terrorism; 3) that the assets at issue are "blocked assets"; and 4) that the assets are "of" a terrorist judgment debtor or its agency or instrumentality. Dkt. 8 at 3-11. Thus, they are entitled to attach the blocked assets. Per *Levinson*, the court should make the findings that it should have made in April 2021.

**C.     Doe Creditors Are Entitled to a Writ of Attachment Pursuant to N.Y. C.P.L.R. § 6212**

Additionally, N.Y. C.P.L.R. § 6212(a) provides that a party may secure an attachment if the moving party establishes four elements: (1) there is a cause of action; (2) that it is probable that he or she will prevail on the merits; (3) that one or more grounds exist for the attachment provided in N.Y. C.P.L.R. §6201; and (4) that the amount demanded from the defendant exceeds all known counter-claims. N.Y. C.P.L.R. § 6212(a); *Pantheon Props. v. Houston,* 2022 U.S. Dist. Lexis 45061 *4 (S.D.N.Y. March 14, 2022).

Article 62 procedures for attachment are often invoked pre-judgment, rather than in a situation, like this one, where judgment creditors are seeking to enforce already obtained final judgments. In *Levinson*, however, the Second Circuit made clear that Section 6201(5) is applicable in a TRIA proceeding to enforce a money judgment, and that an order of attachment may restrain property pending final adjudication of a turnover proceeding.

As the Second Circuit observed.

> The Levinsons were . . . entitled to pursue pre-execution attachment procedures if they chose to do so. Under New York law, which governs attachment proceedings here, *see* Fed. R. Civ. P. 64, "an order of attachment may be granted in any action ... when ... the cause of action is based on a judgment, decree or order of a court of the United States." CPLR § 6201(5). Of course, the Levinsons possessed just such an order—a money judgment against Iran. Accordingly, state law permitted them to pursue attachment procedures to, as the Levinsons have put it, "prevent the dissipation of" KFH Malaysia's assets. Joint App'x at 39. Thus, attachment is a possible remedy, among other interim remedies, available to the Levinsons, provided that they meet the applicable requirements.

*Levinson*, 44 F.4th at 98. The Second Circuit thus clarified that a post-judgment attachment pursuant to N.Y. C.P.L.R. § 6201(5) is an appropriate remedy to protect the interests of a final judgment holder seeking turnover of blocked assets pursuant to TRIA, while any questions of agency or instrumentality status under TRIA are being resolved.

8

Here, as in *Levinson*, attachment is a "possible remedy" for the same reasons. The Doe Creditors are in possession of final money judgments. They have the same "cause of action" as the plaintiffs in *Levinson*—namely, a proceeding to enforce their judgments under TRIA against the assets of an agency or instrumentality of a terrorist party. And they are entitled to pursue attachment pending enforcement of the judgment provided that they can show their probability of success on the merits.

### 1.      The Doe Creditors Have Valid Causes Of Action

The first requirement for an attachment pursuant to N.Y. C.P.L.R. § 6212(a) is simply that a cause of action exists. Here, all of the Doe Creditors have final monetary judgments against the Taliban, Al-Qaeda, and the Haqqani Network, establishing as a matter of law that a cause of action exists. Thus, it is indisputable that the first requirement of N.Y. C.P.L.R. § 6212(a) is satisfied.

### 2.      The Doe Creditors Have Established A Likelihood Of Success On The Merits Within The Meaning Of N.Y. C.P.L.R. § 6212(a)

The second element of N.Y. C.P.L.R. § 6212(a) requires a showing of a probability of success on the merits. The Doe Creditors submit that this inquiry focuses on the likelihood of success on the merits of the plaintiff's claim against the defendant itself and, where the targeted assets are held in the name of a third party, whether the plaintiff has offered plausible facts or evidence of the defendant's interest in that property. *See Astrea United Invest., L.P. v. Onitiri*, 92 Civ. 0581 (MBM), 1992 U.S. Dist. LEXIS 17586, at *9-10 (S.D.N.Y. Nov. 18, 1992) (in order to confirm a post judgment attachment under N.Y. C.P.L.R. § 6201(5) a plaintiff need only establish that it "appears" that the defendant has an interested in the funds held by third parties).

Here, the Doe Creditors have final monetary judgments, establishing that they have meritorious claims. Further, they provide evidence of the quite plausible relationships amongst

major players in well-known narcotics and terrorist financing networks. This confirms the

baseline plausibility of the Doe Creditors' showing of the relevant party's interest in the

property. Those showings are all that is necessary for issuance of the requested post-judgment

attachments, pending a final turnover motion.[5]

The *Levinson* decision underscores this conclusion and demonstrates that this Court need

not (and indeed ought not) decide the ultimate issue of whether the Doe Creditors are ultimately

entitled to execute against the blocked assets in order to grant the requested attachments. *See*

*Levinson*, 44 F.4th at 98. Recognizing the risk that even blocked assets might be dissipated while

the court adjudicates the target's agency or instrumentality status, the Second Circuit suggested

that post-judgment attachment under N.Y. C.P.L.R. § 6201(5) in aid of execution under TRIA

could be granted while the underlying question is decided. *Id*. at 98. (The same of course applies

to other questions of whether the assets are collectible). Thus, N.Y. C.P.L.R. § 6201(5) is "a

possible remedy, among other interim remedies," available under TRIA in aid of execution. *Id*. It

would make no sense to require a movant to prove that the target is an agency or instrumentality

of a terrorist party or resolve all other questions in order to obtain interim relief pending the

Court's evaluation of whether the target is an agency or instrumentality of a terrorist party. To do

so would merge the interim and final relief, essentially rendering that bifurcated inquiry

pointless. It would also allow state procedural requirements to prevent the enjoyment of a federal

---

[5] While technical questions of whether the assets are available for collection are being litigated
by other judgment creditors before this court (*see* e.g. *Stansell et al., supra* note 1), there is a
plausible claim that they are. Doe Creditors are entitled to attach the assets just as these other
judgment creditors have those assets attached pending resolution of those questions.

substantive right to "attachment in aid of execution." Where state procedure conflicts with the

federal mandate, the state procedure must yield.[6]

Thus, consistent with the holding in *Levinson* and TRIA's substantive right to attachment

in aid of execution*,* a post-judgment attachment under N.Y. C.P.L.R. § 6201(5) does not require

an ultimate showing on all issues, precisely because post-judgment attachment in aid of

execution is a provisional, temporary remedy designed to prevent dissipation of assets while

other proceedings are pending.

### 3. Doe Creditors' Final Judgment Establishes Grounds For Attachment Pursuant To N.Y. C.P.L.R. § 6201(5)

The analysis of the third condition for attachment under N.Y. C.P.L.R. § 6212(a) – that

one or more grounds exists under N.Y. C.P.L.R. § 6201 to grant an attachment – is equally

straightforward.  In relevant part, N.Y. C.P.L.R. § 6201 provides:

> § 6201. Grounds for attachment. An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

* * *

> 5.  the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualifies for recognition under the provisions of article 53.

N.Y. C.P.L.R. § 6201(5).

---

[6] Indeed, this truth is demonstrated in all TRIA collections against blocked assets of agencies or instrumentalities of terrorist judgment debtors, as state garnishment and execution statutes typically have language allowing for execution of assets of the "defendant" or the "judgment debtor". The state law limitation always yields to and is modified to accommodate the federal substantive right to execution or attachment of assets of agencies or instrumentalities of terrorist judgment debtors.

Because all of the Doe Creditors have final monetary judgments issued by "a court of the United States," grounds for attachment exist. *See Levinson*, 44 F.4th at 98 (a plaintiff satisfying the final judgment requirement of TRIA may seek a post-judgment attachment of blocked assets pursuant to TRIA and N.Y. C.P.L.R. § 6201(5), to protect its interest and prevent dissipation of those assets); *see also Astrea United Invs*., at *1 (attachment under N.Y. C.P.L.R. § 6201(5) is a remedy that may be used to enforce a judgment).

### 4.      The Doe Creditors Are Not Required To Show A Need For The Attachments

Unlike parties who seek the harsh remedy of a prejudgment attachment, the Doe Creditors are seeking post judgment attachments and do not have to establish a need for the attachments.  *See* N.Y. C.P.L.R. § 6201(5).  Unlike other provisions of N.Y. C.P.L.R. § 6201, the plain text of N.Y. C.P.L.R. § 6201(5) conspicuously does not include language requiring a showing of need in order to secure an attachment.  Nor does TRIA. In contrast, N.Y. C.P.L.R. § 6201(3), by way of example, requires the movant to establish that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."  The omission of any such language from N.Y. C.P.L.R. § 6201(5) makes clear that a party seeking an attachment under that provision need only have a judgment, and need not make an additional showing of "need."

### 5.      Doe Creditors Have A Need For The Attachments

The immediately preceding section notwithstanding, if Doe Creditors were required to establish a need for the attachments, they do. The effect of *Levinson* is unsettled. The Second Circuit's decision in *Levinson* has created uncertainty in the procedural steps judgment creditors must follow to enforce judgments under TRIA, potentially upsetting decades of settled practice

in the Southern District of New York. This uncertainty raises the possibility that the blocked assets may not be subject to any restraints, or may leave them subject to dissipation and attack by other potential creditors. Here, these motions are made in the context of other judgment creditors who have suddenly realized, after twenty years, that they should pursue judgments against the Taliban. These parties clearly follow Doe Creditors' docket and seek to take advantage of the work Doe Creditors have done in locating blocked assets; investigating whether the holder of the assets is an agency or instrumentality of the terrorist judgment debtors the Taliban, Al-Qaeda or the Haqqani Network; and developing intelligence and expert testimony, at substantial cost, to establish the agency or instrumentality relationship, such as the testimony that Doe Creditors put before his Court on April 30, 2021. Dkt.8-5. Thus, the Court is respectfully requested to rule expeditiously, and take steps necessary to preserve Doe Creditors' rights, such as issue its order *nunc pro tunc*.

## III.    CONCLUSION

For the reasons set forth above, the Doe Creditors respectfully request that the Court reconsider the denial of Doe Creditors Motion for Issuance of Writ of Execution (Dkt. 8), make the preliminary findings that the requirements of TRIA are satisfied and grant, *nunc pro tunc*, the issuance of both the Writ of Execution and the Writ of Attachment requested herein.

Dated:  March 20, 2023

Respectfully submitted,

By: */s/  Orlando do Campo*
Orlando do Campo
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
Tel: (305) 358-6600
od@danddtlaw.com

13

John Thornton
(*pro hac vice*)
do Campo & Thornton, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
jt@dandtlaw.com

Daniela Jaramillo
(*pro hac vice*)
do Campo & Thornton, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
dj@dandtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 20, 2023, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

<u>s/ *Orlando do Campo*</u>
Orlando do Campo