**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JOHN DOES 1 THROUGH 7,                          :
                                                :
                            Plaintiffs,         :          MEMORANDUM DECISION
                                                :            AND ORDER
              -against-                         :
                                                :          20 Misc. 740 (GBD) (SN)
THE TALIBAN, AL-QAEDA, and                      :
THE HAQQANI NETWORK,                            :
                                                :
                            Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, United States District Judge:

Judgment Creditors ("Doe Creditors"), American citizens who were wounded in a

January 4, 2016 terrorist bombing at Camp Sullivan, Afghanistan (*see* Compl., ECF No. 8-2, ¶¶ 1–

7), hold a default judgment against the Taliban, al Qaeda, and the Haqqani Network (collectively,

"Judgment Debtors") from the United States District Court for the Northern District of Texas.

(*See* Clerk's Certification of J. to Be Registered in Another District, ECF No. 5.)  Pursuant to the

Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 note, Doe Creditors seek to

partially satisfy their judgment by attaching or executing against the blocked assets of Samark Jose

Lopez Bello and Yakima Trading Corporation located in this District (the "Blocked Assets"),

alleging that Lopez Bello and Yakima are Judgment Debtors' "agenc[ies] or instrumentalit[ies]."

*Id.*

Though Doe Creditors currently hold a writ of execution against the Blocked Assets

(*see* Writ of Execution, ECF No. 148-1; unnumbered docket entry dated Apr. 12, 2022), owing to

an intervening change in the governing law, they now move for reconsideration of the denial of

their original motion for a writ of execution against the Blocked Assets, to ensure the validity of

their current writ.  (Mem. of Law in Support of Mot. for Reconsideration ("Mem."), ECF No. 148,

at 1; *see also* Mot. for Reconsideration, ECF No. 147; Mot. for Writ of Execution ("Original Motion" or "Original Mot."), ECF No. 8.) Doe Creditors also move for post-judgment attachment to prevent the dissipation of the Blocked Assets prior to execution. (Mem. at 1, 11.) Upon reconsideration, Doe Creditors' requests for writs of execution and attachment against the Blocked Assets are DENIED, and their preexisting writ of execution is VACATED.

## I.   PROCEDURAL BACKGROUND

Doe Creditors commenced this action on December 14, 2020 by registering their foreign judgment from the United States District Court for the Northern District of Texas in this District. (*See* Clerk's Certification of J. to Be Registered in Another District, ECF No. 1.[1]) On April 30, 2021, Doe Creditors filed the Original Motion. (Original Mot.) In the Original Motion, Doe Creditors asserted that Lopez Bello is the "functionary" of former Venezuelan Vice President Tareck El Aissami,[2] and that Yakima is Lopez Bello's "front company." (*Id.* at 10 (citing Decl. of Brian Fonseca ("Fonseca Decl."), ECF No. 8-5, ¶¶ 46–51).) Because "Lopez Bello was [E]l Aissami's main interlocutor to both South American and Middle Eastern drug trafficking and money laundering operations" (*id.* (citing Fonseca Decl. ¶ 48)), Doe Creditors claim that Lopez Bello and Yakima are agencies or instrumentalities of the Judgment Debtors, thereby subjecting

---

[1] This filing was later corrected at ECF No. 5.

[2] El Aissami served as Venezuela's Vice President between 2017 and 2018. Fonseca alleges that "El Aissami facilitated shipments of narcotics from Venezuela and controlled the drug routes by leveraging his executive control over Venezuelan air bases, planes, and ports" and that El Aissami has "links" to Hezbollah. (Fonseca Decl. ¶ 46.) In 2017, the Treasury Department's Office of Foreign Assets Control issued sanctions against El Aissami (along with Lopez Bello and Yakima), identifying him as a "Specially Designated Narcotics Trafficker" due to his "significant role in international narcotics trafficking." Press Release, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello*, U.S. Dep't of the Treasury (Feb. 13, 2017), https://home.treasury.gov/news/press-releases/as0005.

their assets, under TRIA, to execution in satisfaction of Doe Creditors' judgment against the Judgment Debtors. (*Id.* at 10–11 (citing Fonseca Decl. ¶ 53).)

Judge Katherine Polk Failla[3] declined to grant the Original Motion *ex parte*, ruling that Lopez Bello and Yakima needed to be served with the moving papers before a writ of execution could be considered. (Order, ECF No. 12.) Doe Creditors then attempted to serve Lopez Bello and Yakima through an attorney representing them in unrelated proceedings, but Judge Failla found this insufficient to support a determination that Lopez Bello and Yakima had actual notice of the instant action. (Order, ECF No. 14.)

While Doe Creditors' efforts to obtain the Blocked Assets remained in limbo, after the Taliban returned to power in Afghanistan in August 2021, Doe Creditors moved for a writ of execution against assets of Afghanistan's central bank held at the Federal Reserve Bank of New York. (*See* Emergency Mot. for Writ of Execution, ECF No. 15.) In connection with that motion, Judge Failla noted that "[p]er the Clerk of Court, the proper process for issuance of a writ of execution against property in this District is to send a physical copy of the writ of execution, complete with an original (*i.e.*, not electronic) signature directly to the Orders and Judgments Clerk . . . ." (Order, ECF No. 26.) After Doe Creditors conceded that they did not follow this procedure in seeking writs of execution against Lopez Bello's and Yakima's blocked assets, Judge Failla denied the Original Motion. (*See* Order, ECF No. 46.) Doe Creditors thereafter followed the process laid out by Judge Failla and obtained a writ of execution against the Blocked

---

[3] This case was transferred to the undersigned on February 16, 2022. (*See* Order, ECF No. 54.)

Assets on April 12, 2022.  (Writ of Execution, ECF No. 148-1; unnumbered docket entry dated Apr. 12, 2022.)

Despite currently holding a writ of execution against the Blocked Assets, Doe Creditors seek reconsideration "out of an abundance of caution" so that this Court can rule on the validity of their preexisting writ in the wake of the Second Circuit's decision in *Levinson v. Kuwait Financial House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022).  (Mem. at 1–2.)  *Levinson* held that "before ordering assets to be seized under TRIA, a district court must make findings as to whether TRIA indeed permits those assets to be seized," *i.e.*, "a plaintiff must first establish [a] defendant's status as an agency or instrumentality" of a terrorist party.  44 F.4th at 97.  Doe Creditors seek reconsideration of Judge Failla's denial of the Original Motion, claiming that they "satisfied *Levinson* before *Levinson* was decided" by virtue of the factual findings set forth in Brian Fonseca's Declaration, which was appended to the Original Motion.  (Mem. at 3.)  In light of *Levinson*'s statement that "[plaintiffs] were . . . entitled to pursue pre-execution attachment procedures if they chose to do so," 44 F.4th at 98, Doe Creditors also seek a writ of attachment against the Blocked Assets to prevent their dissipation prior to execution.  (*See* Mem. at 5, 8–13.)

## II.   LEGAL STANDARDS

### A. Motions for Reconsideration

Though Doe Creditors do not cite to it, Local Rule 6.3 governs motions for reconsideration within this District.  Under Local Rule 6.3, reconsideration is not favored and is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court

4

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).   Such narrow grounds justifying reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).   A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also Weiss v. El Al Isr. Airlines, Ltd.*, 471 F. Supp. 2d 356, 358 (S.D.N.Y. 2006) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue." (citation omitted)).[4]

## B. TRIA and *Levinson*

Under TRIA, "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party

---

[4] Pursuant to Local Rule 6.3, parties must file motions for reconsideration within fourteen days of the Court's determination of the original motion.  Here, Doe Creditors filed their motion on March 20, 2023, nearly two years after Judge Failla denied their Original Motion on May 5, 2021.  (Order, ECF No. 12.) As Doe Creditors premise their Motion on the change of law set forth in *Levinson*, this Court considers that "Rule 6.3's fourteen-day clock might restart when an intervening change of law occurs." *Commerzbank A.G. v. U.S. Bank N.A.*, No. 16 Civ. 4569 (DLC), 2022 WL 884968, at *3 (S.D.N.Y. Mar. 25, 2022) (citing *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 224 n.15 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020)).  Doe Creditors fare no better on this front, as *Levinson* was decided on July 21, 2022, nearly eight months before they filed the instant motion.  Although untimeliness alone is reason enough to deny a motion for reconsideration, *see McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018), this Court will evaluate Doe Creditors' Motion on its merits.  *See Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06 Civ. 6468 (KMW) (MHD), 2014 WL 5343306, at *5 n.8 (S.D.N.Y. Oct. 21, 2014); *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060 (HB), 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009).  This Court also notes that while it is common practice for courts to convert untimely Local Rule 6.3 motions to motions for relief from a final order made under Federal Rule of Civil Procedure 60(b), *see Farez-Espinoza*, 2009 WL 1118098, at *3, this option is unavailable in the instant case, as there is no final order. *See Doe v. Columbia Univ.*, No. 20 Civ. 6770 (GHW), 2022 WL 16856158, at *2 (S.D.N.Y. Nov. 10, 2022) ("The key word is 'final'—[Rule 60(b)] only applies to *final* orders.").

(*including the blocked assets of any agency or instrumentality of that terrorist party*) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." 28 U.S.C. § 1610 note (emphasis added).  Therefore, to recover under TRIA, "(1) the judgment creditor [must have] obtained a judgment against a terrorist party, (2) on a claim based on an act of terrorism . . . , which the creditor seeks to satisfy with the (3) blocked assets, (4) of that terrorist party or that terrorist party's agency or instrumentality, (5) to the extent of only the creditor's compensatory damages." *In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 333 (S.D.N.Y. 2023) (footnote omitted).

Though TRIA does not define "agency or instrumentality," the Second Circuit has determined that these terms should be construed "according to their ordinary meanings." *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).  Accordingly, to demonstrate agency or instrumentality status under TRIA, "Plaintiffs must show that each Defendant (1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Id.*; *see also Levin v. Bank of N.Y. Mellon*, No. 09 Civ. 5900 (JPO), 2019 WL 564341, at *4 (S.D.N.Y. Feb. 12, 2019) (applying same standard). *Kirschenbaum* held open the question of whether the purported agency or instrumentality must have knowledge of (or reasonably should have knowledge of) their role as such for a terrorist party. 830 F.3d at 136.

While TRIA makes blocked assets available for execution or attachment, it is silent as to the method or procedures by which execution or attachment occurs.  "In seeking attachment or

execution, therefore, a judgment holder must follow the procedures of state law and, to the extent it applies, federal law." *Levinson*, 44 F.4th at 97.  In *Levinson*, as in the case at bar, plaintiffs sought to execute pursuant to New York law, whereby they commenced turnover proceedings pursuant to N.Y. C.P.L.R. § 5225(b) (McKinney 2022) and moved *ex parte* for a writ of execution.[5] *Levinson*, 44 F.4th at 97.  *Levinson* noted that "pre-execution attachment" is available to judgment holders to prevent the "dissipation" of assets prior to execution.[6] *See id.* at 98.

In *Levinson*, the Second Circuit vacated a writ of execution issued pursuant to TRIA where the district court failed to make factual findings as to whether the target of the writ was an agency or instrumentality of the judgment debtor. *Id.* at 97.  The Second Circuit reasoned that absent such factual findings, there had been no showing that the judgment debtor had any interest in the property in question, and therefore the plaintiffs had failed to meet New York's statutory turnover requirements.  *Id.* at 98.  Following *Levinson*, in addition to satisfying the requirements listed above, "a plaintiff must first establish [the] defendant's status as an agency or instrumentality" before they can attach or execute upon assets pursuant to TRIA.  *Id.* at 97.

## III.   DOE CREDITORS ARE NOT ENTITLED TO A WRIT OF EXECUTION OR A WRIT OF ATTACHMENT

### A. Doe Creditors Satisfy TRIA's Terrorist Party, Act of Terrorism, Blocked Assets, and Amount-of-Compensatory-Damages Requirements

Doe Creditors only seek reconsideration of whether Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities—they have not placed TRIA's other requirements at issue.

---

[5] Here, Doe Creditors reversed the order of operations—they first moved *ex parte* for a writ of execution and stated their intent to file a motion for turnover pursuant to N.Y. C.P.L.R. § 5225(b) upon service of the writ (Original Mot. at 2), whereas the *Levinson* plaintiffs first commenced turnover proceedings and then moved for a writ of execution. *See Levinson*, 44 F.4th at 97.

[6] Under New York law, pre-execution attachment is available pursuant to N.Y. C.P.L.R. § 6201(5) (McKinney 2021).

For completeness, this Court notes that Doe Creditors have satisfied TRIA's terrorist party, act of terrorism, blocked assets, and amount-of-compensatory-damages requirements. *See supra* Section II.B. Judgment Debtors are each terrorist parties, *see In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d at 333 (determining that the Taliban is a "terrorist party" under TRIA); *Foreign Terrorist Organizations*, U.S. Dep't of State, https://www.state.gov/foreign-terrorist-organizations (last visited Mar. 27, 2024) (listing al Qaeda and the Haqqani Network as foreign terrorist organizations), and the January 4, 2016 bombing in which Doe Creditors were injured is listed as a "terrorist incident" by the Department of Justice. *See Terrorist Incident Designation List*, U.S. Dep't of Just. Off. for Victims of Crime, https://ovc.ojp.gov/program/itverp/terrorist-incident-designation-list (modified Feb. 23, 2024). Lopez Bello's and Yakima's assets were blocked pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1904(b), *see Kingpin Act Designations; Publication of Counter Narcotics Sanctions-related Frequently Asked Question*, U.S. Dep't of the Treasury Off. of Foreign Assets Control (Feb. 13, 2017), https://ofac.treasury.gov/recent-actions/20170213 (indicating Lopez Bello and Yakima's Kingpin Act designations); Press Release, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello*, https://home.treasury.gov/news/press-releases/as0005 (announcing same), thereby satisfying TRIA's "blocked assets" requirement.[7] *See* 18 U.S.C. § 2333(e) (defining assets seized or frozen

---

[7] Doe Creditors claim that *Levinson* is inapplicable to their writ of execution because the assets at issue in *Levinson* were "not already restrained" prior to the issuance of the challenged writ of execution, whereas Lopez Bello's and Yakima's assets were seized long before Doe Creditors moved for their writ of execution. (Mem. at 2–3.) This argument is unpersuasive. Even if assets are blocked, to receive a writ of execution, judgment creditors must show that a judgment debtor has an interest in the blocked assets, *see* N.Y. C.P.L.R. § 5225(b), which cannot be achieved *unless* a court determines that the asset-holder is an agency or instrumentality of the judgment debtor. *See Levinson*, 44 F.4th at 98 ("[T]he District Court granted the relief sought in that proceeding—a writ of execution—before it considered the antecedent issue[s] of whether KFH Malaysia is an agency or instrumentality of Iran *or* whether the assets at issue are 'blocked.' Without such findings, there has been no showing that KFH Malaysia is in possession of property 'in which

pursuant to the Kingpin Act as "blocked assets" for TRIA purposes). Doe Creditors seek $138,418,741.00, the amount of compensatory damages they are owed. (*See* Original Mot. at 1; Clerk's Certification of J., ECF No. 5.)

### B. Doe Creditors Have Not Demonstrated that Lopez Bello and Yakima Are Judgment Debtors' Agencies or Instrumentalities

Doe Creditors argue that *Levinson* has no impact on the validity of their writ of execution because they "satisfied *Levinson* before *Levinson* was decided," pointing to the Fonseca Declaration appended to the Original Motion as "establishing the direct operational nexus between the major international narcotics trafficker and money launderer Lopez Bello and his front company on the one hand, and the international terrorist judgment debtors Al-Qaeda, the Taliban, and the Haqqani Network on the other. . . ." (Mem. at 3.)

Brian Fonseca is the Director of the Institute for Public Policy at Florida International University's ("FIU") Steven J. Green School of International and Public Affairs and serves as an adjunct professor in the University's Latin American and Caribbean Studies Center and Department of Politics and International Relations. (Fonseca Decl. ¶ 2.) FIU designates him as an expert on Latin American security. (*Id.*) In addition to his work at FIU, Fonseca has worked in conjunction with the Department of Defense, the Defense Intelligence Agency, and the Department of State. (*Id.* ¶¶ 3, 5, 13.) He has authored and contributed to numerous publications on Venezuela and Colombia, frequently appears on major media outlets, and has testified before the House Foreign Affairs Committee about political developments in Venezuela. (*Id.* ¶¶ 10–15.)

---

the judgment debtor [Iran] has an interest.'" (emphasis added) (citing N.Y. C.P.L.R. § 5225(b))). Therefore, *Levinson*'s (and TRIA's) requirement of a judicial determination of agency or instrumentality status applies regardless of whether the assets at issue are restrained prior to the issuance of a writ of execution.

The Fonseca Declaration details how the War on Terror "drove terrorist organizations toward financing their operations vis-à-vis [sic] illicit activities," thereby bringing them "into the same illicit commercial sphere" as criminal organizations such as the *Fuerzas Armadas Revolucionarias de Colombia* (FARC), "one of the largest drug trafficking organizations in the world."[8]   (*Id.* ¶¶ 15, 20.)   Despite the "decentralized and networked forms of organization[]" typical of both terrorist and narcotrafficking groups, Fonseca claims that global efforts to stamp out such activities have led groups to "internationalize operations and networks," including through reliance on common suppliers for weapons, forged documents, drugs, and other contraband. (*Id.* ¶¶ 16–18.)

After a thorough review of the Fonseca Declaration and its supporting documentation, this Court is unconvinced that Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities.  Though Doe Creditors do not cite to the *Kirschenbaum* factors, this Court notes, as an initial matter, that Doe Creditors do not appear to allege that Lopez Bello and Yakima were "owned, controlled, or directed by" the terrorist parties.  *Kirschenbaum*, 830 F.3d at 135.  That leaves Doe Creditors with the first two *Kirschenbaum* factors—they must show that Lopez Bello and Yakima "provided material services to, on behalf of, or in support of the terrorist part[ies]" or are "a means through which a material function of the terrorist part[ies] is accomplished." *Id.*

Doe Creditors fare no better on these fronts.  Even though Lopez Bello and Yakima are the targets of Doe Creditors' petition for a writ of execution, the Fonseca Declaration mentions them

---

[8] Fonseca describes FARC as "a Marxist–Leninist oriented insurgency/illicit trafficking organization based in Colombia with operations all over the world."  (Fonseca Decl. ¶ 20.)  This Court takes judicial notice of the Secretary of State's designation of FARC as a foreign terrorist organization, which occurred after Doe Creditors filed their Original Motion. *See Foreign Terrorist Organizations*, https://www.state.gov/foreign-terrorist-organizations.

specifically in only 6 paragraphs (out of 53 total),[9] with half of these mentions occurring in either the introductory or concluding sections. (Fonseca Decl. ¶¶ 1, 48–51, 53.) Fonseca's assertion that Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities (*id.* ¶ 53) is simply conclusory and not supported by the evidence he offers. Fonseca does not argue that there is any direct link between Lopez Bello or Yakima and Judgment Debtors. At best, Fonseca has shown that Lopez Bello and Yakima can be considered agencies or instrumentalities of FARC,[10] as evidenced by Lopez Bello's Specially Designated Narcotics Trafficker designation by the Treasury Department and his connection to El Aissami.[11] (*Id.* ¶¶ 46, 48–51.)

Assuming, *arguendo*, that Lopez Bello and Yakima are FARC's agencies or instrumentalities, the evidence Fonseca marshals to support his argument that Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities by virtue of the connection between FARC and al Qaeda is insufficient to support the issuance of a writ of execution. The geographic proximity of FARC and al Qaeda operatives (*id.* ¶¶ 25, 29) is not enough to show that FARC "provided material services to, on behalf of, or in support of" al Qaeda or that FARC is "a means through which a material function of [al Qaeda] is accomplished," *Kirschenbaum*, 830 F.3d at 135, as there is no allegation of the materiality of al Qaeda's alleged activity in South America to the organization. Al Qaeda's supposed desire to "exploit Mexican drug trafficking routes into the U.S.," evidenced by intelligence collected from Osama bin Laden's compound (Fonseca Decl.

---

[9] The Fonseca Declaration spans 17 pages in total and is accompanied by a 523-page appendix of supporting materials that Fonseca consulted in preparing his Declaration.

[10] Of course, the issue of whether Lopez Bello and Yakima are FARC's agencies or instrumentalities is not currently before this Court.

[11] For additional background information regarding El Aissami, see *supra* note 2.

¶ 26), does not suffice, as the existence of a desire does not indicate whether the desire was acted upon.

Fonseca's strongest argument for a connection between FARC and al Qaeda is their "drug trafficking collaboration," whereby "[a]l Qaeda in the Islamic Maghreb agreed with the FARC to provide protection for drugs" from South America "being transited across northern Africa" on their way to Europe. (*Id.* ¶ 28.) As an initial matter, Fonseca only alleges that FARC and al Qaeda "worked" together (*id.*), without describing the materiality of that work to al Qaeda, as *Kirschenbaum* requires. *See* 830 F.3d at 135. Fonseca's general allegations regarding the intersection between terrorist groups and organized crime (Fonseca Decl. ¶¶ 15–18) do not, by themselves, show the importance of this *specific* drug route to al Qaeda.

And even if Fonseca could demonstrate the materiality of the proceeds from this drug trafficking route to al Qaeda, he has not adequately alleged Lopez Bello's or Yakima's involvement in this drug trafficking route. While Fonseca points to the Treasury and Justice Departments' allegation that "Lopez Bello served as the main facilitator of El Aissami's drug shipments leaving Venezuela for U.S. and European markets" (*id.* ¶ 49), Fonseca's supporting materials do not provide enough evidence to support this claim as to the European drug trade. In particular, a Treasury Department press release announcing the imposition of sanctions against El Aissami and Lopez Bello only describes their involvement in "international narcotics trafficking," including El Aissami's facilitation of drug shipments from Venezuela through "control over planes that leave from a Venezuelan air base." (Fonseca Decl. App'x, ECF No. 8-5, at 392; *see also* Press Release, *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello*, https://home.treasury.gov/news/press-releases/as0005.) The press release does not specifically

identify involvement in the European drug trade (Fonseca Decl. App'x at 392–93), though Fonseca cites journalistic reports of cocaine airlifts from Venezuela to West Africa as part of FARC and al Qaeda's "drug trafficking collaboration." (Fonseca Decl. ¶ 28.) Notably, another source cited by Fonseca indicates that the Treasury Department characterized El Aissami's drug trafficking activity as "involv[ing] . . . shipping drugs from Venezuela to Mexico and the United States, both by air and sea," while noting that his "supposed links to terrorism"—in particular, Hezbollah— "have a greater geographical scope." (Fonseca Decl. App'x at 402–03.)

Assuming (without deciding) that the Treasury Department press release encompasses El Aissami's involvement in European drug trafficking, the press release only describes Lopez Bello as "a key frontman for El Aissami [who] in that capacity launders drug proceeds." (*Id.* at 392.) The importance of Lopez Bello's money laundering role to El Aissami—and, by extension, FARC (*see* Fonseca Decl. ¶ 49 ("[The] U.S. Department of Treasury sanctioned Lopez Bello for his role in aiding El Aissami in laundering drug proceeds from South American organizations such as the FARC . . . .")))—does not, without more, mean that this role is equally important to al Qaeda or any other Judgment Debtor. Therefore, the mere allegation that Lopez Bello launders money for El Aissami and FARC is insufficient proof that he or Yakima are Judgment Debtors' agencies or instrumentalities. *See Levin*, 2019 WL 564341, at *5 ("That Plaintiffs have established that Tajideen is an agent or instrumentality of *Hezbollah*, however, does not necessarily mean that Tajideen is an agent or instrumentality of *Iran*. . . . [T]he Court is unaware of any precedent in this Circuit for imputing such a relationship . . . .").

At a higher level of generality, Fonseca further alleges that FARC and Hezbollah have longstanding ties (Fonseca Decl. ¶¶ 30–33), and that "FARC–Hezbollah networks include a wide range of illicit non-state and state actors," including al Qaeda and the Taliban. (*Id.* ¶ 34.)

13

Fonseca claims that "[t]here is . . . evidence of Hezbollah and [a]l Qaeda collaboration around illicit trafficking" (*id.* ¶ 36) and "the FARC, Sinaloa Cartel, and Afghan drug traffickers comprise a common and likely interconnected illicit network." (*Id.* ¶ 40.) Fonseca alleges that in 2009, "El Aissami took a trip to Iran which included a stop in Syria to invite Hezbollah militants to come and work with FARC fighters in Venezuela" (*id.* ¶ 46), and that Lopez Bello was "reportedly involved in selling fraudulent passports to people from [the] Middle East, including people affiliated with Hezbollah." (*Id.* ¶ 50.) Yet such allegations are simply too remote from the Judgment Debtors to support an agency or instrumentality finding.

This Court is cognizant of the reality that terrorist organizations, as well as their agencies and instrumentalities, often "operate in the shadows out of necessity." *See Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 732 (11th Cir. 2014); *see also Kirschenbaum*, 830 F.3d at 134 (citing same). But the clandestine nature of terrorist and international criminal activities does not divest this Court of the obligation, under *Levinson*, to ensure that each of TRIA's statutory requirements is satisfied before a writ of execution or a writ of attachment can issue. Simply put, the Fonseca Declaration is insufficient to demonstrate that Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities.

### C. Doe Creditors Are Not Entitled to a Writ of Execution or a Writ of Attachment

*Levinson* unambiguously states that "[t]o be entitled to attachment or execution under TRIA, a plaintiff must first establish defendant's status as an agency or instrumentality." 44 F.4th at 97. Doe Creditors' failure to make this showing is fatal to their request for a writ of execution, therefore their motion for a writ of execution against the Blocked Assets is DENIED, and their preexisting writ of execution is VACATED. And because attachment operates as an "interim remed[y]" to prevent the dissipation of assets prior to execution, *see id.* at 98, Doe Creditors' motion for a writ of attachment is DENIED, as this Court finds that Doe Creditors cannot execute

upon the Blocked Assets on the theory that Lopez Bello and Yakima are Judgment Debtors' agencies or instrumentalities.

## IV.   CONCLUSION

Upon reconsideration, Doe Creditors' requests for writs of execution and attachment against the Blocked Assets of Lopez Bello and Yakima are DENIED, and their preexisting writ of execution is VACATED.

The Clerk of Court is directed to close the motion at ECF No. 147.


Dated:  New York, New York
        March 27, 2024

                              SO ORDERED.

                              _George B. Daniels_
                              GEORGE B. DANIELS
                              United States District Judge